Essex,<br>March,<br>1841.<br><br>Sumner<br>v.<br>Sherman et al.

---

### David H. Sumner v. Jason Sherman, and others.

No title passes by a deed, from a sheriff, of lands sold by him in satisfaction of the tax of one cent on each acre of land, granted by the legislature of this state, in 1812, for the support of the government, unless the sheriff left a true and attested copy of his proceedings with the county clerk, if the town had not been organized, within thirty days after the sale, and the same were recorded by the clerk.

Trespass, for breaking and entering plaintiff's close, being lot No. 33, in Wenlock, in the county of Essex, laid to the right of Samuel Averill, one of the original proprietors.

Plea, not guilty, and trial by jury.

On the trial in the county court, the plaintiff proposed to show a title in himself to the lot in question, under a deed from William Hughes, sheriff and collector, to James Whitelaw, and intermediate conveyances from said Whitelaw to the plaintiff; and, for this purpose, gave in evidence an act of the legislature, passed at their session in 1807, granting a tax on the lands in the county of Essex, and offered in evidence the record of the proceedings under said act, showing a sale of the lot in question, which were objected to by the defendants; but the objections were overruled. The proceedings of Hughes, in selling the land, are here omitted, as the case was decided upon another point.

The plaintiff then offered a deed from said Hughes, sher-

iff and collector, to James Whitelaw, dated March 21, 1809, of the lot in question. It was objected that said Whitelaw was one of the two persons who witnessed said deed, and, from the testimony introduced on that point, the county court found that Whitelaw, the grantee, was one of the persons who witnessed said deed, and therefore the deed was rejected.

The plaintiff then undertook to show a title to the lot, under a deed from David Hibbard, jr., sheriff and collector, to James Whitelaw and through intermediate grantees, to the plaintiff, and for this purpose read in evidence an act of the legislature, passed at their session in 1812, granting a general land tax of one cent per acre for the support of government. He also offered in evidence the proceedings under said act, as contained in a book of records produced from the county clerk's office in the county of Essex. This evidence was objected to, because the record of these proceedings was not attested by said Hibbard, as copies of his doings, and because the record was not attested nor signed by the county clerk. The plaintiff offered to prove, by parol, that the sheriff's warrant for the collection of the tax,—his advertisements, and other proceedings, were lodged, by the sheriff, for record, in the county clerk's office, within thirty days after completing his sales; that said papers and proceedings were duly recorded by persons in said office, acting under the authority and direction of said clerk, and that said clerk failed to sign said record by reason of his absence when the record was completed and his subsequent death, while absent. This testimony was objected to by the defendants, but was admitted by the court.

The plaintiff then called said Hibbard, who testified that he received his warrant from the treasurer, about the fifth day of December, 1812, and subsequently proceeded according to the record in question; that, within thirty days after completing his sales, he lodged his warrant, the newspapers containing his advertisements, and his original book of sales and proceedings, in the county clerk's office, for record; that, at the same time, he paid to Haines French, the then county clerk, the sum of forty dollars, for recording said papers and proceedings; that said French then received said papers and proceedings, and endorsed on the cover or envelope thereof

the words "Rec'd for record, April 29, 1813;" that Joseph Berry was then deputy jailer, and acted in the business of said French as county clerk, and said French then informed the witness that he had employed said Berry to perform the labor of recording said papers; that said record is mostly in the hand writing of Berry, though some portion of it was in a different hand writing, which he understood to be that of one of the prisoners then confined in jail; that soon after said proceedings were so lodged for record, said French went into the service of the United States, and subsequently died in said service, without ever having returned home; that a few months after leaving the papers to be recorded, the witness called to take them, if they were recorded, and, being informed that they had been recorded, he received them at the jail. The witness then produced the original warrant and book of proceedings. Upon this testimony, which was uncontradicted, the county court overruled the objections to the record or copy offered by the plaintiff, and it was admitted in evidence. As the only question decided, in this court, related to the admissibility of said record or copy, as evidence, it becomes unnecessary to state the objections made by the defendants to the validity of the sheriff's proceedings in selling the land, or the deeds from the grantees of Whitelaw to the plaintiff.

The jury returned a verdict for the plaintiff, and the defendants excepted to the decisions of the county court.

This case was argued at the last term of this court by *S. Cushman* for defendants, and *O. P. Chandler* for plaintiff, but no opinion was then pronounced. At the present term,

The opinion of the court was delivered by

WILLIAMS, Ch. J.—The inquiry in this case is, whether the plaintiff acquired any title to the premises sued for, under the deed to James Whitelaw from David Hibbard as sheriff and collector of the tax of one cent on each acre of land in this state, granted in the year 1812. This is the only inquiry in this case, as the deed from William Hughes to Whitelaw, under another tax, was not in evidence, but rejected by the court.

The grounds upon which the court proceed, in deciding

*Essex,*
*March,*
*1841.*

Sumner
*v.*
*Sherman et al*

upon the validity of vendue sales, by collectors of taxes, have been too often stated to be again repeated. We do not feel at liberty to assume other grounds, although it may appear that courts have heretofore been extremely and critically nice in the views they have taken. To shake any of the established principles, or to proceed upon more liberal, or even on such as may appear more correct views, might disturb many titles which have been considered as settled, and revive many an antiquated claim which has been considered as at rest. The principal object in view has been to ascertain what the statute has required; whether all has been done which was required, and, if it has, the title of the purchaser has been treated as perfected. If it has not been done, it has been considered that no title has been acquired. I believe that this principle has always governed the court in the decisions on vendue sales, and, although there have, at times, been different views entertained as to who were to take the burden of proof, yet, it has never been doubted that a failure to comply with what is enacted must be fatal to any title attempted to be acquired. Thus it has been considered that a neglect of the collector to record his proceedings, to leave a copy of his warrant and the advertisements, although subsequent to the sale, or to take the oath and give bonds when required so to do, was a defect which prevented any title passing by his sale. It is enough for us to inquire what the legislature have said, supposing that their intentions were made known by the terms they have used, and not to indulge in any fanciful conjectures as to their meaning, or to substitute something else in lieu of what they have enacted.

The statute, laying this tax in 1812, appears to have been copied from a previous one in 1807. Having had experience in this state, at that time, that vendues, even by sheriffs, were not always conducted fairly, that the written proceedings, or records, by them kept, were mutilated, altered and suppressed, and it being, *at that time,* considered that a sheriff's deed was *prima facie* evidence of the previous proceedings, and the regularity thereof, the legislature provided, in the act in question, as well as the previous one, not only that the sheriff and the several collectors should keep a record of their proceedings, but, within thirty days next after the ending of their vendues, should lodge a true and attested copy of

their sales, together with their warrant and tax bill and advertisement, with the town clerk in any organized town, and with the county clerk where the towns were unorganized, whose duty it was to record such proceedings. This was calculated to protect the purchaser, as well as the owner whose lands were sold, by preserving the evidence of the proceedings and authority of the collector, and by preventing any frauds to be apprehended from the mutilating or falsifying of these records by the collector, or deeding when he had not sold, or when he had no authority to sell. By a resort to these records, the purchaser could ascertain whether his title was complete, and the owner, whether his title had been devested by a public sale. It may be sufficient for us to say that the legislature have required this to be done, and by all the previous decisions in this state it has been considered that a failure so to do was fatal to the purchaser's title; that, although the purchaser has no control over the sheriff to compel him to leave this copy, or over the clerk to compel him to record it, yet, unless it is done, he can acquire no title; and if he has any remedy, it must be against the officer who neglects his duty.

In the case before us, the sheriff left no true and attested copy of his sales with the clerk, and even if it should be considered that leaving the original sales, attested by him, could be considered as leaving an attested copy of his sales, which, however, is not admitted, yet, it is evident they never were recorded, but were taken back by him, before the county clerk for the county of Essex had ever recorded them, as required by the statute. The proceedings were never enrolled and transcribed into the public records of the county by, or under the direction of, the county clerk, and we are without any evidence, at this day, that either French, the then county clerk, or his successors, have ever examined the books, and compared the record, so as to be able to certify that they were truly transcribed. It appears that the county clerk, soon after receiving from Hibbard his original sales, went into the army and died. The deputy jailer, and a prisoner in jail, did all that ever was done towards transcribing these sales into the public records; they were never examined, compared, nor certified by any competent authority, and the originals were handed back to Hibbard, at the jail. To

Essex,
*March*,
1841.

Sumner
*v.*
Sherman *et al.*

this proceeding we cannot give the name of a record. If they had been compared and certified either by French, or his successor in office, before they were delivered back to Hibbard, it might have merited a different consideration.

For these reasons, we think a just regard to the previous decisions of this court requires us to say that this sale was inoperative, and that the deed from Hibbard conveyed no title.

These views were entertained by the court at the last term. We omitted to make the decision, on an intimation that the circuit court for this district had decided differently, and a just regard to the opinions of that able and enlightened court induced us to hold the case under consideration. But we cannot learn distinctly that this question has been decided by them. In the case of *Tucker* v. *Sherman*, before that court, the plaintiff made title under four vendues. If either were good, it was sufficient for his purpose in that case. Which of the several vendues were decided to be sufficient to establish his title, does not appear by the case, nor have we been able to ascertain whether this sale by Hibbard was considered as valid or not. We, therefore, do not think it important to retain this case any longer, as we are convinced that it would conflict with all our decisions previously made, and set up titles which have not been considered as of any avail. The judgment of the county court is reversed.