# WHEELING.

## BARTON'S HEIRS *v.* GILCHRIST.

Submitted January 19, 1881.    Decided December 17, 1881.

\*(PATTON, JUDGE, Absent.)

1. It was the official duty of the recorder to note in his office the day, on which the sheriff returned to his office his list of the sales of lands for delinquent taxes, and the certificate of the oath attached thereto.

2. If he failed to make such note, so that his office did not show, when such list was returned by the sheriff to the recorder's office, this omission is such a fact appearing on the face of the proceedings of record in the office of the recorder, as renders invalid any deed he may have made to a purchaser of the land sold for such delinquent taxes.

3. If the recorder's office shows, that this list of sales was not returned to the recorder's office for more than ten days after the completion of the sale, this is such an irregularity, as materially prejudices the rights of the owner of the land sold and therefore vitiates any deed made to a purchaser of the land by the recorder.

4. It was not the official duty of the recorder to note, when he actually copied such list on the record-book, nor when he transmitted it to the auditor.

5. Therefore the fact, that his office shows, that such list was not copied on the record-book for more than twenty days after the return of the list to that office, or that it was not transmitted to the auditor within these twenty days, or the fact that the office failed to show, when such list was actually copied on the record-book or when it was transmitted to the auditor, will not invalidate a deed to a purchaser made by the recorder; for by law these facts are not required to appear in the recorder's office, and if they did appear by an unofficial act of the recorder, they could have no effect to invalidate the deed of the purchaser.

6. A surveyor's report was required by our Code to give the metes and bounds of the land, so that it could be located; but it was not required on its face to identify the land surveyed or the land sold by the sheriff for taxes. It would suffice under the provisions in our Code for this necessary identity to be shown by the entry made by the recorder, when the surveyor returned his report, provided the entry was such, as it was the official duty of the recorder to make, and showed, that the report was returned by the surveyor.

7. It was necessary, that the identity of the land sold by the sheriff with the land named in the surveyor's report should appear on the face of the report or by such proper official entry by the recorder; and if it did not appear in one of these modes, it would be such an irregularity, as materially to prejudice the owner of the land sold, and would therefore vitiate a deed made by the recorder to the purchaser.

---

\*Case submitted before Judge P. took his seat.

8. An offer by the owner of the land made after the purchaser had received a defective deed but within five years of the sale to pay the purchaser $100.00, a sum greatly exceeding the amount necessary to redeem the land, if he would release his title or claim to the land, which offer was declined by the purchaser, is no tender of the money necessary to redeem the land and would therefore be no prejudice to any right the purchaser might have to obtain another and valid deed from the recorder.

Writ of error to a judgment of the circuit court of the county of Monroe rendered on the 17th day May 1878, in an action in said court then pending, wherein the heirs of Seth Barton, deceased, were plaintiffs, and Thomas Gilchrist was defendant, allowed upon the petition of said Gilchrist.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the judgment complained of.

GEEEN, JUDGE, furnishes the following statement of the case:

On March 15, 1799, Seth Barton obtained from the commonwealth of Virginia a patent for nine hundred acres of land in what was then Greenbrier county now Monroe county. When this suit was brought, he had four grandchildren and twenty great grandchildren living, who had inherited this tract of land by descent through their deceased parents, who inherited it from their parents, who were heirs of Seth Barton, deceased, or who were heirs of deceased children of Seth Barton; and these twenty-four persons held this tract of land as co-parceners, it never having been divided among them. At a public sale made by the sheriff of Greenbrier county on September 16, 1869, this land or a part of it described in the report of the sale made by the sheriff as eight hundred and thirteen acres of land in Sweet Springs township on Little Devil's creek was sold in the name of Seth Barton's heirs for delinquent State and county taxes for the year, 1868, the State taxes amounting to $2.56 and the county taxes to $2.54; and Thomas Gilchrist became the purchaser. This report of sale failed to state, what estate the heirs of Seth Barton held in this land. The affidavit was made and subscribed by Gaston Callaway, deputy for Lewis Ballard, sheriff of Monroe county, to the truth of this report, the sale having been made by him, and that he was not directly or indirectly inter-

ested in the purchase; and this affidavit was subscribed by him. It is headed: "State of West Virginia, Monroe county, to wit." And its authentication is: "Subscribed and sworn to before me this 21st day of January, 1870.

"ALFRED PHILLIPS, <i>J. P.</i>"

Said report was returned and ordered to be recorded by the recorder of said county court on January 21, 1870. On November 7, 1870, Thomas Gilchrist the purchaser had a survey made by the surveyor of Monroe county, which he returned to said recorder's office December 28, 1870.

This survey sets out, that he had "surveyed for Thomas Gilchrist eight hundred and twenty-four acres of land in Monroe county, head waters of Second creek, part of a survey of nine hundred acres granted to Seth Barton, describing it by metes and bounds." This report does not state, that it was land, which had been so purchased by Thomas Gilchrist but simply that it was surveyed for him. But the plat and report were on the 28th of December, 1870, ordered to be recorded by the recorder, and the order made by the recorder confirming the same and directing them to be recorded does state it to be a plat and report of the land so bought by Thomas Gilchrist; that it was returned to the office by the surveyor; and that Seth Barton's heirs filed that day a notice contesting the validity of the surveyor's report for reasons therein stated and made a part of the record. But this notice is not made a part of the record in this case and does not appear. The recorder of Monroe county then executed a deed for said land to Thomas Gilchrist, dated same day, December 28, 1870; and on the 12th day of March, 1872, he executed to him another deed for the same land. In the first deed it is recited, that the surveyor's report was ordered by the recorder to be recorded on December 28, 1870; but it does not say, that it was actually recorded. It describes the land as in the report of sale by the sheriff as situated "on Little Devil's creek in the Sweet Springs township." In describing the sale it says: "The taxes and damages due on this land were $5.10;" but it does not show for what year these delinquent taxes, for which it was sold, were due. The second deed avoids these irregularities.

At April-rules, 1875, a declaration in ejectment was filed

by the heirs of Seth Barton against the said Thomas Gilchrist for the recovery of this land and was in the usual form of such a declaration. It contained six counts, which differed from each other in the names of the plaintiffs in the different counts. In these different counts the names of all these co-parceners, descendants of Seth Barton, are inserted as plaintiffs and also the husbands of the female co-parceners, but not all of them in any one count; and Thomas B. Barton, who was a son of Seth Barton, and also his wife Susan C. S. Barton, appear as plaintiffs in some counts, the said Thomas B. Barton and his said wife being both dead, when this suit was instituted. To this declaration the defendant Thomas Gilchrist pleaded not guilty. On the trial the facts were all agreed by the counsel of the parties in writing; and they waived a trial by jury and submitted the whole matter to the decision of the court, who on May 17, 1878, entered up the following judgment:

" This day came again the parties, by their counsel, and the parties having filed a written agreement of all the facts in the case, they waived a jury, and submitted the case to the court in lieu of a jury, and the matters of law arising upon the facts agreed having been fully argued, and the court having maturely considered all the matters arising thereon, doth find for the plaintiffs the land in the declaration mentioned, and that the plaintiffs have title in fee to said land. It is therefore considered, that the plaintiffs recover from the defendant the possession of the land mentioned in the declaration and bounded as aforesaid and their costs in the prosecution of this action. And on motion of the plaintiffs, a writ of possession is awarded to them against the defendant and all persons claiming through or under him to put the plaintiffs in the possession of said land, directed to the sheriff of this county, returnable here, &c."

The defendant excepted to this judgment of the court; and the facts agreed on were ordered to be made a part of the record. These facts are all those above stated with the patent to Seth Barton; the report of the tax-sale made by the sheriff; the report of the surveyor and order thereon made by the recorder and the two deeds from the recorder to the defendant above referred to; and the deposition of W. S.

Barton proving as above stated the heirs of Seth Barton. None of the descendents of Seth Barton, who have died, left wills, so far as appears, except Thomas B. Barton, his son, who willed all his property to his wife, Susan C. S. Barton, and she on her death willed it to the witness, W. S. Barton. He does not state his relation to these devisees ; but it nevertheless appears, that he was the son of Thomas B. Barton, because he states, that Seth Barton was his grandfather, and he specifies in his deposition all the children of Seth Barton other than Thomas B. Barton, and all their children, and the witness not being among any of these grandchildren specified must be the son of Thomas B. Barton, as in this way only could he be, as he states he is, a grandson of Seth Barton. The wills of Thomas B. Barton and of his widow do not appear in the record. In addition to the facts above stated it was agreed, that on the 1st day of January, 1871, the defendant took possession of this land and is still in the possession thereof, and that the plaintiff's attorney between the 1st day of October, 1871, and the 1st day of March, 1872, offered to pay the defendant $100.00, if he would release his title or claim to said land, but the defendant declined to accept said offer, but at that time said attorney did not have any of the plaintiff's money, though he did not state, whose money it was, that he then offered to pay.

Upon these facts the court rendered the above judgment, which was excepted to, and a writ of error and *supersedeas* has been on the petition of the defendant awarded him to this judgment.

*A. N. Campbell* and *A. C. Houston* for plaintiff in error cited the following authorities:  Code, pp. 520–523 ; 2 Mat. Dig. 644, 645 ; Tyl. Eject. 626, 627 ; 11 Gratt. 172 ; Gilb. Ten. 21 *et seq.* ; 3 Black. Com. 173, 176 ; 10 Johns. 338 ; 9 Johns. 174 ; 15 Gratt. 190 ; 16 Johns. 314 ; 2 Greenl. on Ev. § 30 ; Black. Com. Bk. 3, 176, n. 8 ; 18 Gratt. 426 ; 22 Gratt. 51 ; 4 Min. Inst. 752 ; 6 W. Va. 8 ; 11 W. Va. 543 ; 3 Gratt. 258 ; 7 W. Va. 147 ; Hill. Tax. p. 491, § 9 ; *Id.* 500, § 27 ; *Id.* p. 545, § 71 ; 10 Gratt. 426 ; 1 Gilm. 160 ; Code, p. 193, § 25 ; Code, 192, § 19 ; 32 Cal. 106 ; Bl. on Tax-Title 374; 55 Pa. St. 90 ; 21 Ark. 582 ; Code, p. 190, § 16 ; 36 N. Y.

150; 18 Ark. 423; 21 Pick. 426; 14 Wall. 553; 2 Gray 188; 17 N. H. 420; Code, p. 189, § 13; Blackw. Tax-Titles s. p. 342; 1 Watts 42; 9 Ohio 83; 47 N. H. 258; 52 N. H. 526; Sedgw. Con. & Stat. Law 372; 6 Wend. 487; 5 Cow. 269; Blackw. Tax-Titles 261; 5 Cranch 234; 3 Wheat. 594; 9 Wheat. 720; 7 Hill 9; 3 Greenl. 290; 22 Ala. 116; 3 Gratt. 192; 7 W. Va. 135.

*J. F. Patton* and *A. C. Snyder* for defendants in error cited the following authorities: Code, ch. 31, §§ 10, 12, 14, 18, 19, 24; Blackw. Tax Tit. s. p. 381; *Id.* s. p. 260–265; *Id.* 303–308 *et seq.*; 40 Me. 587; 38 Me. 461; 33 Miss. 451; 8 Ohio 114; 1 D. Chip. (Vt.) 239; 19 Vt. 49; 13 Vt. 609; 16 W. Va. 345; 12 Gratt. 266; 13 Gratt. 523; 8 W. Va. 114; 1 Bailey (S. C.) 507; 8 B. & C. 22.

GREEN, JUDGE, announced the opinion of the Court:

In an action of ejectment the plaintiff must show a right to the possession of the premises at the time of the commencement of the suit. Code of W. Va. ch. 90 § 14 p. 519. The right thus shown must generally be a right to the possession of the premises against all adverse claimants and not against the defendant only. The general rule is, that the plaintiff must establish a legal title to the possession of the premises, as by the strength of his own title and not by the weakness of his adversary he must prevail. There are exceptions to this general rule, as for instance, where a party in peaceable possession of land is entered upon and ousted by one not having title to or authority to enter upon the land, the party ousted may recover the premises in ejectment upon his possession merely; and in such case his right to recover cannot be resisted by showing, that there is or may be an outstanding title in another but only by showing, that the defendant himself either has title or authority to enter under the title. *Tapscot* v. *Cobbs and others,* 11 Gratt. 172. But the case before us does not come under this or any other exception to the general rule.

We will therefore first enquire, whether the plaintiffs have established a title against all persons other than the defendant; for this they are required to do in this case, before they are entitled to recover the land in the declaration men-

tioned.   This they have done in this case, though it is strenuously maintained by the counsel of the defendant, that they have not.   It is admitted, that Seth Barton had title to this land.   It is admitted, that he died, leaving children and this admission, gave title to this land to the children of Seth Barton.   It is said, that this does not follow, because he might have made a conveyance of the land or devised it by will. Certainly this may be so, but that it is so, does not appear in the agreed facts in this case ; and it is agreed, that all the facts, upon which the cause is to be decided, are therein admitted. Upon these facts thus admitted the land on the death of Seth Barton descended to his children or his heirs.   In the same manner and on a like admission of facts the land has descended to all the plaintiffs named in the declaration.   It is true, that the one undivided fifth part of this land, which thus descended to Thomas B. Barton, it is stated by the witness W. S. Barton, was devised to his widow Susan C. S. Barton and by her was devised to the witness, W. S. Barton.   If these wills had been produced, they would have proven that one of the plaintiffs, W. S. Barton, had title to one undivided fifth of the land claimed ; but as these wills have not been produced, the title in W. S. Barton is not proven.   He could not testify to the existence of these wills and their contents without producing them.   We must consider the case, as though these wills had not been made; but in that case W. S. Barton would have title to one undivided fifth of this land as heir to his father, Thomas B. Barton.   For though it is not stated, that he was a son of Thomas B. Barton, it is stated that he was a grandson of Seth Barton, and as we have the children and grand children of all the other children of Seth Barton given, and W. S. Barton is not one of them, it must follow as clearly, as if expressly stated, that he was a son of Thomas B. Barton.

When this suit was brought, Thomas B. Barton and Susan C. S. Barton were both dead, and no judgment should have been rendered in their favor; but this in no manner prevented a judgment in favor of all the other plaintiffs, for the 23d section of chapter 90 of Code of West Va. p. 520 provides, that the verdict may be in favor of *such of the plaintiffs*, as appear to have rights to the possession of the premises or any part thereof.   It is true the next section adds, that " where

any plaintiff appears to have no such right, the verdict as to such plaintiff shall be for the defendant." But as there can be no verdict for Thomas B. Barton or his wife, only because they were dead, so and for precisely the same reason there can be no verdict or judgment against them. If then the plaintiffs established their right to recover, the judgment in this case should have been in favor of all the plaintiffs except Thomas B. Barton and his wife, who were dead, when the suit was brought. And if there be no other error in the judgment of the circuit court, it should in this respect be amended and affirmed.

The next and important enquiry in this case is : Has the defendant established title in this land in himself ? He claims it only under the two tax-deeds mentioned in the statement; and they convey to him this land and establish his title against the plaintiffs, unless they are invalid and void. Are they then, or either of them, valid or are they both illegal, null and void ? The statute-law in force, when this tax-sale was made, and these deeds were executed, is that contained in the Code of West Virginia chapter 31, page 186. Before examining the deeds themselves we will examine the steps in the acquisition of the defendant's title, which preceeded the making of either of these deeds and determine, whether any valid deed of this land could have been made by the recorder to the defendant. The 25th section of chapter 31 of the Code of W. Va. pp. 193, 194, provides, that the recorder's deed shall be valid " notwithstanding any irregularity in the proceedings, under which the said grantor claims title, unless such irregularity appear on the face of the proceedings of record in the office of the recorder and be such, as materially to prejudice the rights of the owner, whose real estate is sold." Our enquiries will then be confined to those irregularities, if any exist, in the proceedings of record in the recorder's office.

By the 14th section of chapter 31 of Code of West Va. pp. 189, 190, the first thing which should appear of record is the sheriff's " list of sales with the certificate of oath attached." The twelfth section provides, what this list of sales must show. In it, as appears by the tenth section of this chapter, p. 189, there should be a column headed " Estate

held in the land sold." This column was not filled up; and if the estate held in the land sold did not elsewhere appear in the list, I am of opinion, that it would be a fatal irregularity for the reasons assigned by Johnson, Judge, in *Jones* v. *Dils*, 18 W. Va. 759. But the nature of the estate sold does appear in this list, for this land sold was charged to Seth Barton's heirs, as appears by the list ; and as none but a fee simple estate descends or can be held by heirs, this mode of charging the land implied necessarily, that the estate sold was a fee simple, and therefore this irregularity would not vitiate the deeds. The list is in all other respects such, as the law required.

The 14th section of chapter 31 of the Code of West Virginia, pages 189 and 190 provides, that this list with the certificate of oath attached shall within ten days after the completion of the sale be returned to the recorder of the county, who shall within twenty days thereafter make an accurate copy thereof in a well bound book and transmit the original to the auditor. The affidavit to this list in this case was not made till more than four months after the sale; and it was not returned to the clerk's office for four months and five days. It was then ordered to be recorded, but that it ever was actually copied on the record-book, does not appear, or that it ever was transmitted to the auditor, does not appear. This section 14, while it requires this list and certificate of oath to be returned within ten days after the completion of the sale, does not in words require any record or note of the time to be made by the recorder ; but this is necessarily to be implied;   Thus chapter 73 of the Code, section 2, page 469, provides, that the recorder shall admit to record any deed, contract, power of attorney or other writing, when it shall have been acknowledged or proved by two witnesses before the recorder. It does not as in the case of the return of the list of sales of the sheriff say in express words, that he shall note or record the time, when such deed was so acknowledged or proved ; but it is necessarily implied, that he must do so ; for if he did not, the principal object of recording these writings would be defeated. So too the time, when the list of sales of a sheriff is returned to the recorder's office, must be noted by him, otherwise the requirement of the law, that

they be returned in ten days would be entirely defeated, as it would not appear, when they were returned.

This noting by the recorder when the list of the sheriff's sale and certificate of the oath thereto is returned to the recorder's office being required by law, when he does so note it, as he did in the case before us, this time of the return becomes in the words of the law, section 25, chapter 31 of Code pp. 193, 194, one of the facts appearing on the face of the proceedings of record in the recorder's office. Or if the recorder fails to perform his duty by noting, when this list and certitificate were returned, such omission is one of the facts appearing on the face of the proceedings of record in the recorder's office.

It remains to enquire, when this omission of duty by the recorder appears, or when he has performed his duty by noting the time of such return, and it appears, that the sheriff has failed to return this list of sales and certificate of oath attached within ten days from the completion of the sale. Are these such irregularities, "as," in the language of the 25th section of said chapter 31, page 194, "materially to prejudice the rights of the owner, whose real estate is sold?" While this return of this list of sales by the sheriff may in part be directed with a view of furnishing the means to the purchaser of taking the further steps necessary to perfect his title to the land bought by enabling him perhaps more readily to obtain his deed, yet it hardly seems necessary for such purpose, and that cannot be regarded as the only or as the principal reason for requiring this return to be made so *promptly* to the recorder's office. It would equally as well have answered any such purpose, if it had been returned to the recorder's office any time within one year from the day of sale, as the purchaser could not get his deed till after that time by the 19th section of chapter 31 of the Code, page 192. A much more important object of requiring this list of sales to be returned to the recorder's office so promptly was to furnish the owner of lands sold the means of knowing certainly as soon after the sale as practicable the name of the purchaser of his lands and the amount paid by him for the land at the sale, in order that the owner of the land sold might redeem his land within one year from the day of sale, and at the earliest practicable time to furnish to him this knowledge or the means of obtaining

it in the recorder's office, and thus to furnish to him the longest practicable time, after he can acquire this knowledge, within which to redeem his land. The 19th section of chapter 31 of the Code, page 190, provides, that the owner of lands so sold may redeem the same within one year from the sale thereof by paying to the purchaser the amount paid by him for the purchase of the land and such additional taxes thereon, as he may have paid, with interest on this purchase-money and taxes at the rate of 12 per cent. per annum. It is obviously therefore of importance to the owner of the land sold, in order that he may exercise this right, that the recorder's office should as promptly after the sale as practicable furnish him the means of learning, who is the purchaser of his lands, and how much he paid for the lands. The prompt return to the recorder's office of his list of sales by the sheriff furnishes the owner of the land the ready means of obtaining this important information. This means of thus readily acquiring this necessary information the owner of the land sold is entitled to have as promptly, as the law requires it to be furnished, that is within ten days after the sheriff's sales are completed. Hence he has a direct and most important interest in the prompt performance of this duty by the sheriff. The failure of the sheriff to make this return within ten days after the completion of the sale or of the recorder to note, when this duty was performed by the sheriff, is such an irregularity as materially to prejudice the rights of the owner of the land sold within the meaning of the 25th section of chapter 31 of the Code, p. 194; and therefore it renders invalid any deed for the land made by the recorder to the purchaser.

In the case before us the list of sales with certificate of oath attached, was not returned to the recorder's office for more than four months after the sheriff's sales were completed instead of within ten days, as the law required; and this fact appears on the face of the proceedings of record in the recorder's office The deeds therefore for this land made by the recorder to the defendant, the purchaser of this land at the sheriff's sale, are necessarily invalid.

The next enquiry is, whether when it appears in the recorder's office, either that the recorder did not within twenty days

after this return of this list of sales to his office make an accurate copy thereof in a well bound book and transmit the original to the auditor, or when it does not appear how long after the return of the list of sales by the sheriff to the recorder's office it was actually copied on the record-book and transmitted to the auditor, the tax-deed is thereby vitiated. If the recorder had by the law been bound to note in his record-book the time, when these acts were done, it appears to me, that if this time exceeded the twenty days from the return of this list of sales to his office, or if the time, when these acts were done, was not noted on the record-book, it would be an error in the proceedings appearing of record in the recorder's office, which would be fatal to the deed afterwards made by him to the purchaser. The extent, to which a court can go in holding that only directory, which such a statute requires to be done, is thus expressed by Judge Pope in *Mayhew* v. *Davis*, 4 McL. 213 : " But it is said that some of the requirements of the Legislature are only directory and may be dispensed with. Upon this it may be remarked, that a judge should rarely, if ever, take upon himself to say, that what the Legislature has required is unnecessary. He may not see the necessity of it, still! it is not safe to assume, that the Legislature did not have a reason for it ; perhaps it only aimed at uniformity. In that case the judge cannot interfere to defeat that object, however puerile it may appear. It is admitted, that there are cases, where the requirements may be deemed directory. But it may be safely affirmed, that it can never be, where the act, or omission of it, can by any possibility work advantage or injury however slight to any one affected by it. In such case it can never be omitted." See also *Taylor* v. *French*, 19 Vt. 49 ; *Sumner* v. *Sherman*, 13 Vt. 609 ; *Pinkham* v. *Morang*, 40 Me. 587 ; *Hill* v. *Mason*, 38 Me. 461 ; *Huntington* v. *Brantley*, 33 Miss. 451 ; *Kellog* v. *McLaughlin*, 8 Ohio 114.

The general views here expressed seem to me sound, but when applied to our law with reference to tax-sales it must be borne in mind, that certain irregularities our statutes declare shall not be fatal to the validity of the tax-deed, which but for these provisions would have been fatal to such validity. Leaving them out of consideration for the present I should

say, that the omission of the recorder to actually copy on the record-book the list of sales returned by the sheriff and to transmit the list to the auditor in twenty days from the return of such list would be fatal to the tax-deed made by the recorder to the purchaser at such sale. For though the owner of the lands has much less interest in the prompt doing of these required acts than in the return of the list to the recorder's office promptly, yet he has an interest in these, which I can not say, is not substantial. The copying of this list of sales would furnish to the owner of the land sold a somewhat easier mode of ascertaining, who was the purchaser of his land, and what price he paid for it, which as we have shown, it is important to him, that he should have promptly. Still the fact, that the original list of sales by the sheriff is on file in the recorder's office, furnishes him this means of information though not in so convenient a form. The transmitting of the list of sales to the auditor as soon, as the law requires, may also be of importance to the land-owner, as he would learn after its transmission, who was the purchaser of his lands, and what price he paid, not only at the recorder's office but also at the auditor's office.

But the Legislature has, as I understand, declared, that the omission of his duty in this respect by the recorder, shall not vitiate his deed to the purchaser of the land at the tax-sale. The 25th section of chapter 31 of the Code pages 193 and 194 declares, that this tax-deed shall be valid " notwithstanding any irregularity in the proceedings, under which the grantee claims title, unless such irregularity appears on the face of the proceedings of record in the office of the recorder, &c." Now this failure of the recorder to copy this sale-list of the sheriff on the record-book in twenty days after its return to the office and transmit the original to the auditor, as required by the 14th section, will not appear of record in the recorder's office, as this 14th section page 189–190 does not require the recorder to note on the record-book the time, when these acts were done by him. But it may be said, that it is his duty to make such note on the record-book, though it is not expressly required so to do, just as it is his duty to note the time, when the sheriff returned his list of sales to the office, and it is ordered to be recorded. I do not think so.

There is a great difference between the two. The general duty of the recorder from the very nature and purposes of his office requires him, when any deed or other writing is brought to his office to be recorded, to note the time, when such deed or other writing is so brought and left at his office to be recorded; and the statute-law never expressly requires him to do this duty, it being necessarily implied from the character of his office. But not so with reference to the time, when a deed or other writing is actually copied on the record-book, or when the original of such deed or writing is withdrawn from his office. The recorder in such case never makes a note of the time, when such deed or writing is actually copied on the record-book, and though he does sometimes make a note of the person, to whom he has delivered the deed, after it is recorded, and perhaps in some cases of the time of its delivery, yet this is clearly no part of his official duty but is done simply for convenience, that it may be proven, that the original has been withdrawn from the office, and to save himself the trouble afterwards of making a useless search for it, if the original should afterwards be called for by any one.

Now in the absence of any requirement of the statute-law, that the recorder should note on the record-book the time, when he actually copied the sheriff's sale-list on the record-book and transmitted the original to the auditor, it seems to me, it is not his official duty to do so, just as it is not his official duty to make a note of the time, when he actually copied a deed or any other writing on the record-book, and when he delivered the original to any person. I can see no reason in the absence of any statutory requirement, why it should be his official duty to make any different note on the record-book with reference to such sheriff's sale-list, which he is required to record, and a deed or other writing, which he is required to record. In each case it is his duty to state on the record-book the time, when the sale-list, deed or other writing was left with him to be recorded, but not when he actually copied it on the record-book or delivered the original from the office, after it was so copied on the record-book. If he should happen to note on the record-book, that the original sale-list was transmitted to the auditor, such a note would no more be an official act, than a like note of the delivery of the

original deed to the grantee would be official; and therefore if such note was made and showed, that the original sale-list of the sheriff was not transmitted to the auditor till after twenty days from the time, when the sale-list was returned by the sheriff to the office, it would not vitiate the tax-deed, because when the law speaks of proceedings appearing of record in the recorder's office, it means of course such, as the law requires should appear there. In the present case therefore the tax-deeds to the defendant would not be vitiated by the failure of the books in the recorder's office to show, when the list of sale of the sheriff was actually copied on the record-book, or when the original was transmitted to the auditor.

The next thing, which the law requires to appear of record in the recorder's office, is the report of the surveyor under the 18th section of chapter 31 of the Code of W. Va. p. 192. This section provides, that when an entire tract of land was sold and not redeemed within one year, the purchaser &c. shall have a report made by the surveyor of lands for the county specifying the metes and bounds of the land sold and giving such description thereof, as will identify the same; and the recorder, unless there be some valid objection to the report, shall order the same to be recorded, and a record thereof shall be made accordingly. It is obvious, that a compliance with these provisions of the law is essential to the validity of the deed made by the recorder to the purchaser of the land at the tax-sale. And it was so expressly decided by this Court in *Orr* v. *Wiley et al.*, *supra*. As I understand this 18th section, what is required to appear on the face of their report, is only the metes and bounds of the land and such a description thereof, as will identify the same, that is, such a description, as would enable any one to locate and find this land, and not such a description, as would identify the land named in the report as the same land named in the sheriff's list of the sales of land.

But if this identity of the land sold and the land named in the surveyor's report does not appear, as it is not required to appear, on the face of the report, it is obvious, that it must in some way appear in the recorder's office;

for by the 19th section of chapter 31, page 192, when the deed is made by the recorder to the purchaser the description of the land is taken from this report, and the obvious object of requiring such report is to give an accurate description by metes and bounds of the land sold, as the sheriff's sale-list gives a very loose and general description, too loose to make a deed from with any certainty as to what land was thereby conveyed. If this necessary identity of the land sold and that named in the surveyor's report does not, as it need not, appear on the face of the report, it can only appear in the recorder's office by the entry he makes, when the surveyor returns such report to him for recordation. The proper entry to be made by him is, that on such a day a plat and report of the survey of a tract of land (describing it as in the sheriff's list of sales giving the name of the parties, in whose name it was sold, as well as that of the purchaser) was returned by the surveyor of the county, and the same being examined and found to be properly made is ordered to be recorded. Such an entry would supply the identity of the land sold and the land named in the report, which did not appear on the face of the report. It is such an entry, as the recorder ought officially to make ; for it amounts only to specifying the case, in which the report was returned by the surveyor, and when it was returned, and these it is obviously his official duty to note on the record. When he does so, it amounts to a declaration by the surveyor, that the land sold and that named in the sheriff's list of sales are identical, and it serves the same purpose, as if this was expressly stated in the report of the surveyor. Of course it would be fatal to the validity of the deed made by the recorder to the purchaser, if the face of the surveyor's report showed, that this identity could not exist, the descriptions of the land being inconsistent, but if they be consistent, their identity may be shown by this entry made by the recorder.

In the case of *Orr* v. *Wiley et al.*, *supra*, this identity was in no manner shown ; and it was decided, that the tax-deed was therefore invalid. In this case the report of the surveyor does not on its face identify the land sold by the sheriff with that named in the report of the surveyor ; but the entry made

on his book by the recorder, when this report was returned, is in the proper form and does identify the land named in the report, as that sold by the sheriff. And there being no inconsistency between the description of the land in the surveyor's report and in the sheriff's list of the sale of the land, the proceedings were, so far as they respect this survey, regular and furnish no ground for assailing the validity of the tax-deeds.

There were some other irregularities in the proceedings of record in the recorder's office claimed by the counsel of the defendant in error as fatal; but I do not so regard them. Among these irregularities it is claimed, that the certificate of the oath attached to the list of sales of the sheriff did not conform to the statute; that it does not appear to have been sworn to before any proper officer; and that the list proven is not sufficiently indentified as the list returned by the sheriff. I do not think, that any of these positions of the counsel for the defendant in error are valid. Many irregularities in the deeds are also relied on as rendering them null and void. In the first deed it is claimed, that the recitals are not such, as are required by the 19th section of chapter 31 of Code of W. Va. p. 192. One of these objections seems to be well founded, as the deed does not show for what year or years the land was returned delinquent, or for what year's taxes it was sold. See *Dequasie* v. *Harris*, 16. W. Va. 345; *Burlew* v. *Quarrier et al.*, 16 W. Va. 108. A rather hasty examination of the second deed discloses no defects except those, which necessarily arose from its reciting correctly the time, when the sheriff returned said list to the recorder's office, which involved a fatal irregularity, of which I have already spoken.

I think the attempt to prove a tender is a failure. It was made after the expiration of the year and long after the first deed for the land had been made by the recorder to the purchaser, and it was rather an offer to purchase the defendant's claim to this land or to get a release of it from him by paying him $100.00. And the offer was made upon a condition, that he would release his claim or title. It does not affirmatively appear, that the attorney for the defendants had the $100.00 with him, nor upon what grounds the defendants declined to accept the offer. This does not amount to a tender. See *Koon* v. *Snodgrass*, 18 W. Va. 320.

I am therefore of opinion, that the judgment of the circuit court should be amended to read: "Doth find, that the plaintiffs other than Thomas B. Barton and Susan C. S. Barton, who were dead, when this suit commenced, have title in fee to said land" instead of the finding, which was made; and the judgment should be so modified, as to be for the plaintiffs other than Thomas B. Barton and Susan C. S. Barton; and when so modified the judgment should be affirmed and the defendant in error should recover of the plaintiffs in error their costs in this court expended and $30.00 damages; and this judgment should be certified to the circuit court of Monroe.

JUDGES JOHNSON AND HAYMOND CONCURRED.

JUDGMENT AMENDED AND CONFIRMED.

---

# WHEELING.

