# CHARLESTOWN.

## P. WHITHAM *v.* WILLIAM SAYERS ET AL.

### October 31, 1876.

If deeds of record show who is the equitable owner of a tract of land, and the assessor has taxed on his books the tract of land to the equitable owner, he ought not to tax the same land on his books, to the person who holds the legal title for the benefit of the equitable owner of the land, though the deed to such person does not, on its face, show that he is not the owner of the equitable, as well as legal title, but this is only shown by a preceding deed of record. And if he do so and the land is sold for the non-payment of such taxes, and a deed made to the purchaser, such sale is illegal, and the deed null and void.

*1876.*
*August Term.*

Appeal from a decree of the circuit court of Ritchie county, pronounced on the twenty-fourth day of October, 1873, in a suit in equity then therein pending, in which P. Whitham, the appellant, was complainant, and William Sayers, M. M. Hitchcox and T. J. Rawson were defendants. The facts are set forth in the opinion of the Court.

Hon. C. J. Stuart, Judge of said circuit court, presided at the hearing below.

*Scott and Cole*, for appellant.

*C. Boggess,* for appellee.

GREEN, JUDGE:

P. Whitham filed his bill in the circuit court of Ritchie county, in October, 1872, against William Sayers, M.

M. Hitchcox and T. J. Rawson, the object of which was to have declared null and void, a deed from the recorder of Ritchie county to M. M. Hitchcox and T. J. Rawson, dated May 17, 1871, of a tract of land in said county of five hundred acres, which they had purchased on September 10, 1867, at a public sale, by the sheriff of that county, of lands delinquent for the non-payment of taxes, and to enjoin the defendant, Sayers, who claimed under them, from cutting timber and committing waste on said land.

The pleadings and depositions show the following to be the facts. In 1863, Robert Horner and David Horner, being the owners of one thousand acres of land in that county, agreed, by parol, to divide the same between them by a certain line, and, therefore, David Horner sold and conveyed the five hundred acres which had been assigned to him to M. F. Murray and his brother Linville Murray. This deed, therefor, bears date December 30, 1863. Without any recitals, it grants and conveys this five hundred acres by metes and bounds, "together with, all and singular, the tenements, hereditaments and appurtenances, and all the estate, title and interest of the party of the first part therein. And the party of the first part, David Horner, did, thereby, covenant and agree with the parties of the second part, the grantees, that he would warrant and defend the above granted premises in quiet and peaceable possession of the said parties of the second part, their heirs and assigns forever." This deed was duly recorded on January 12, 1865. On February 12, 1864, W. F. Murray and brother, and their wives, conveyed the same land to the plaintiff, P. Whitham. The deed, in the granting part, uses the same language as the deed above recited to the grantors, and has a covenant in the same words as the deed to the grantors. It was recorded at the same time, January 12, 1865. Shortly afterwards, David Horner, discovering that the title to the land he had sold was defective, there never having been any deed of partition

between him and Robert Horner, procured from him,

and his wife, a deed, with special warranty of title, to N. F. Murray and brother of this five hundred acres of land. By this deed, "they did bargain, sell and quit claim, to N. F. Murray, and brother, all of their, Robert Horner and wife's, right, title, interest, and estate, claim and demand, both in law and equity, as well in possession, as in expectancy of, in and to, all that certain messuage, or tract of land, situated in Ritchie county, State of West Virginia, bounded as follows, giving the boundaries of said five hundred acre tract." This deed was recorded May 20, 1865. Robert Horner also sold to other parties the half of the one thousand acres, which had been assigned to him by the parol division of the land, between him and David Horner, and made deeds therefor, which were completed afterwards by deeds made to the purchasers by David Horner. This five hundred acres of land, conveyed to the plaintiff, was put on assessor's books in 1865 in the name of N. F. Murray and brother to whom it had been conveyed by David Horner, and, in 1866, it was put on the assessor's books in the name of P. Whitham, the plaintiff, to whom it had been conveyed by Murray and brother ; but it was not taken off of the assessor's books in the name of Murray and brother as it should have been, it being probably left on the books in both names, because it was supposed to be two different tracts, it being described in one of the entries as four hundred and eighty-nine acres. Instead of taking it off of the books of the assessor, after the deed to P. Whitham, it was not only continued as four hundred and eighty-nine acres, but in 1866, the same tract of land was taxed a third time as five hundred acres on the assessor's books, to N. F. Murray and brother. This was probably done because of the deed to Murray and brother, made by David Horner and wife, and which had been recorded. Thus this tract of five hundred acres was on the assessor's books three times, though there was but one real claimant of the land.

85

1876.
August Term.

Whitham
v.
Sayers.

On September 10, 1867, the taxes on this land not having been paid, the sheriff of Ritchie county sold this land twice, once as a tract of four hundred and eighty-nine acres of N. F. Murray and brother, and also as a tract of five hundred acres of N. F. Murray and brother. This tract, when described by mistake as four hundred and eighty-nine acres, being sold as delinquent for the years 1865 and 1866, it was purchased in by the State at this sale, and, afterwards, redeemed by P. Whitham, the real owner of the land, he also paid the taxes on it as assessed to him in his own name. At the other sale, on the same day, of the same tract of land taxed as five hundred acres in the name of N. F. Murray and brother, the defendants, M. M. Hitchcox and T. J. Rawson, became the purchasers, and, subsequently, obtained, on May 17, 1871, a deed from the recorder of said county for this land. They then made an agreement for the sale of it to the defendant, Sayers, who entered upon it, and commenced cutting the timber, but since the institution of this suit, that agreement has been cancelled by the parties.

On October 24, 1873, the cause was heard, and the court being of opinion that the plaintiff had failed to show, that the deed from the recorder of Ritchie county to the defendants, Hitchcox and Rawson, dated May 17, 1871, is invalid, and that the complainant, Whitham, was the owner of the entirety, in fee, of this tract of land; and the court, being further of the opinion, that the deed from the Murrays to the complainant, Whitham, of February 12, 1864, conveyed to him an undivided moiety of said tract of land, and that the title of the other moiety was, at that time, vested in Robert Horner, whose deed, dated April 12, 1865, conveyed this undivided moiety to the Murrays, and that the same did not pass to the plaintiff, because the deed from the Murrays to him was a deed of special warranty only; and the court, being further of opinion, that this undivided moiety of said land, conveyed by Robert Horner to the Murrays, passed by the

1876.
August Term.

Whitham
v.
Sayers.

recorder's deed to Hitchcox and Rawson, and thus they were entitled to one-half of said land, and the plaintiff to the other half, dissolved the injunction, and dismissed the bill at the plaintiff's costs, from which decree an appeal to this Court has been taken by the plaintiff, Whitham.

The boundaries of this tract of land, called five hundred acres, more or less, in the deed, really contains four hundred and ninety-nine acres, and this is, probably, the reason why it was put on the assessor's books, in one instance, as four hundred and eighty-nine acres, he making a mistake of ten acres in the entry.

The decree of the circuit court shows that, the question discussed before that court was, whether the deed from Robert Horner to the Murrays passed, by way of estoppel, their legal title to one undivided moiety of this land to their vendee, P. Whitham, the plaintiff, by virtue of the previous deed made by them to the plaintiff. The circuit court was of opinion, that it did not. This question has been elaborately discussed before this Court. It is insisted that a conveyance of land, with general warranty of title, passes a title subsequently acquired by the grantor, the title subsequently acquired by the grantor being, at once, transferred, by estoppel, to his former grantee; that a general warranty does not, simply, operate to estop the grantor from claiming the land, but as an absolute transfer of the title subsequently acquired by him; that while a special warranty might not have this effect, that a covenant for quiet enjoyment will; and that whenever the terms of the deed, or of the covenants it contains, clearly show that it was meant to convey an absolute and indefeasible title, and not merely that which the grantor had at the time, it will bind and pass every estate, or interest, which may vest in the grantor, subsequent to its execution, whether the warranty be general or special, and though it may contain no warranty whatever. It is also insisted that, as the estoppel, produced

by such a deed, operates as a transfer of the title subse-
quently acquired, that it must so operate, not only against
the grantor, but against all persons claiming by, through,
or under him, even though they be purchasers for valua-
ble consideration, without notice. These positions are
all controverted, and especially the last, it being con-
tended that section ten, of chapter seventy-four of the
Code of West Virginia, copied from the code of Virginia
of 1849, then in force, prevents such effect, in any case,
being attributed to an estoppel, as against a purchaser
for valuable consideration without notice, and that the
purchaser of a tax title occupies the position of such a
a purchaser. The whole subject is elaborately discussed
in Smith's Leading Cases, notes to the case of *Doe v.
Olliver*, and Dutchess of Kingston case.

In the view I take of this case, it is unnecessary to
determine any of these questions. We are not called
upon to decide whether the deed from the Murrays to the
plaintiff, Whitham, operated by way of estoppel to con-
vey to the plaintiff the legal title to one moiety of this
land, subsquently conveyed by Robert Horner to the
Murrays.

The deed from David Horner to the Murrays conveyed
to them the legal title to one undivided moiety of this
land, and the equitable title to the whole of this land.
The mere legal title to the other undivided moiety of
this land remained in Robert Horner. The records did
not then show that the Murrays had an equitable title to
this moiety of the land, the legal title of which was in
Robert Horner. The assessor seems, however, to have
understood the real facts, for he taxed, on his books, the
whole of this tract, calling it four hundred and eighty-
nine acres, and assessed it to the Murrays. After they
obtained their deed from David Horner, and after they
conveyed this land to the plaintiff, Whitham, he assessed
the whole tract, calling it five hundred acres, to him.
But, after Robert Horner conveyed his mere legal title
to this land to the Murrays, the assessor, improperly,

taxed the tract to them, they having really no interest in the land, having previously conveyed the whole of it to the plaintiff, Whitham. I say, the assessor improperly assessed this land to the Murrays, because the deed to them from Robert Horner, and their deed to the plaintiff, taken together, both of which were of record, clearly showed the plaintiff, Whitham, owned the whole of the eqitable title of this land. Whether these two deeds, taken together, gave to the plaintiffs the legal title to the whole of this land by estoppel, it is unnecesssary to decide. For the deeds of record disclosing that the equitable title to the whole of this tract of land was in the plaintiff, Whitham, and the assessor having on his books taxed the whole of this tract of land to Whitham, he had no right to assess the same on his books to the Murrays, who, the records showed, had only a naked legal title to a moiety of the land. The assessor probably fell into this blunder from his having forgotten that he had before assessed this identical tract of land to the Murrays, as a tract of 489 acres, and having forgotten this, he probably thought the tract of land, conveyed by Robert Horner, was a different tract from the one he had previously assessed to the Murrays. I say that the records showed that the Murrays had, at most, but a mere legal title, for, as I understand the deed from them to Whitham, the language of which is quoted above, they conveyed this entire tract of land, by metes and bounds, and convenanted that their grantee, Whitham, should have the quiet enjoyment thereof. And when they, subsequently, obtained a deed from Robert Horner, they became the holders of the mere legal title for the benefit of their grantee, Whitham, who had, as those two deeds showed, a right to demand a conveyance from them, so as to transfer the legal title, if it was not transferred, by estoppel, without a deed. This land being thus improperly assessed to Murray and brother, they were under no obligation to pay the taxes so assessed. And the sheriff

had no right to sell this land for the non-payment of these taxes. The purchase, therefore, at this sale, by Hitchcox and Rawson, conferred no right on them, and the deed made by the recorder to them, was entirely inoperative.

It is hardly necessary to quote authority for a position so obviously right, but I will refer to the case of *Lohrs v. Miller's Lessee*, 12 Gratt. 452. In that case, a party who merely claimed to be a purchaser from a person who held the legal and equitable title to a tract of land, had the same assessed in his name, and paid the taxes thereon. The records disclosed that he claimed to be such purchaser, but did not show that he really was such purchaser, or that he had any real interest in the land. Nevertheless the court held, that the assessor having assessed the land in the name of the party, who the record thus showed claimed to be a purchaser, it would have been improper to have assessed it, in the name of the party whom the record showed had the legal title, and the failure, therefore, to so assess it, did not produce a forfeiture of the land for such failure. This case goes much further than it is necessary to go in the case before us, in setting aside a deed based upon a failure to pay taxes.

The decree of the circuit court must be reversed, and the appellant recover of the appellees, Michael M. Hitchcox and T. J. Rawson, his cost about his appeal expended; and this Court, proceeding to render such decree as the circuit court should have rendered, doth order that the injunction awarded in this cause be perpetuated, and that the deed from George W. Amos, recorder of the county of Ritchie, in the State of West Virginia, dated May 17, 1871, to Michael M. Hitchcox and T. J. Rawson, referred to in the bill and proceedings, be set aside and declared null and void, and that P. Whitham, the plaintiff in this cause, do recover of the defendants Mich-

ael M. Hitchcox, T. J. Rawson, and William Sayers, his costs about his suit expended, in the circuit court of Ritchie.

The other Judges concurred.

DECREE REVERSED.