# CHARLESTON.

## GERKE BREWING CO. *v.* ST. CLAIR.

Submitted January 19, 1899—Decided March 25, 1899.

1. TAX DEED—*Setting Aside Tax Deed—Equity Pleading.*
     A bill in chancery, filed for the purpose of setting aside a tax deed for mere irregularities, which fails to allege sufficient statutory grounds therefor is demurrable. (p. 97).

2. TAX DEED—*Setting Aside Tax Deed.*
     Under the provisions of chapter 31 of the Code relating to the sale of real estate for taxes, there are only two classes of cases in which tax deeds free from fraud, duly executed and recorded, can be set aside: (1) Where irregularities appear on the face of the record in the office of the clerk of the county court, such as materially prejudice and mislead the owner of the real estate sold as to what portion of his real estate was sold, and when, and for what years, or the name of the purchaser thereof. Code, c. 31 s. 25, (2) When the taxes are not in arrear, but have been once paid. *Id.* ss. 26, 27. (p 94).

Appeal from Circuit Court, Kanawha County.
 Bill by the Gerke Brewing Company against J. St. Clair. Decree for plaintiff, and defendant appeals.

*Reversed.*

WATTS & ASHBY, for appellant.
PAYNE & PAYNE, for appellee.

DENT, PRESIDENT:

The Gerke Brewing Compnay filed its bill in the circuit court of Kanawha County on the first Monday of February, 1896, for the purpose of annulling a tax deed for a certain lot of ground in the city of Charleston, made by the clerk of the county court of the county to J. D. St. Clair on

the 31st day of December, 1892, and recorded the same day. The lot was sold for taxes delinquent thereon for the year 1890 on the 9th day of December, 1891. The defendant demurred to the bill as insufficient in equity, and the court overruled the same. On a final hearing of the case on bill and answer, general replication, and depositions, the court entered a decree setting aside and annulling the deed. From this decree, defendant appeals.

The first error assigned is to the overruling of the demurrer. The question thus presented is as to the sufficiency of the bill. Under chapter 31 of the Code there are only two causes for which a tax deed duly executed in pursuance of a tax sale can be set aside. The first is under section 25, where an irregularity appears on the face of the proceedings in the office of the clerk of the county court, and it is such as materially to prejudice and mislead the owner of the real estate so sold as to what portion of the real estate was so sold, and when, and for what years, it was sold, or the name of the purchaser thereof; and not then unless it be clearly proved to the court or jury trying the case that, but for such irregularity, the former owner of such real estate would have redeemed the same under this chapter. The second is under section 27, and relates to cases where the owner claims the taxes were not in arrear, but were paid. This covers the case of a double assessment, payment of the taxes once being all that could be required by the State. This bill does not come under section 27, as it fails to allege that the taxes were not in arrear for the year 1890, or to claim payment thereof; hence it must be deemed to have been filed under the twenty-fifth section. Under this last section the plaintiff is required to allege, and show by the facts set out in his bill, the existence of prejudicial and misleading irregularities on the face of the proceedings in the office of the clerk of the county court as to what portion of his real estate was sold, and when, and for what years it was sold, or the name of the purchaser thereof; and he must further allege that he was misled thereby, and, if he had not been so misled, he would have redeemed the real estate sold. It is not sufficient to allege mere pretexts, but there must be prejudicial and misleading irreg-

ularities.    The bill alleges that the property was conveyed
to the plaintiff by two separate deeds,—one dated the 28th
of February, 1887, and recorded the 3d day of March,
1887; the other the 25th of January, 1888, and recorded the
31st day of January, 1888.    The lot was assessed on the
land books of the county to plaintiff in the year 1887 by
virtue of the deed for that year.    Then, when the deed
was recorded in 1888, the county clerk, being misled there-
by, and taking it for granted that it was a different lot,
again placed it on the land books; thus making a double as-
sessment.    This plaintiff should have had this corrected in
the manner provided by law, but, instead of doing so, it paid
the taxes on one assessment for the years 1887 and 1888, and
allowed it to be returned delinquent on the other assess-
ment for 1888, and be sold and purchased by the State.
When it presented its second deed for record, if it had in-
formed the clerk of the county court that it was for the
same lot already owned by it, the double assessment would
have been avoided.    For the year 1889 the double assess-
ment again appeared, and the plaintiff paid one, and again
allowed the other to be returned delinquent.    For the
year 1890, it was only assessed once, but was omitted as
to the other, and, plaintiff failing to pay the taxes, it was
returned delinquent.    The auditor's record thus showing
the return of two distinct lots of land as shown by their
valuation, one being valued at six hundred dollars and the
other at two hundred and fifty dollars, returned delin-
quent for different years, he certified them separately to
be sold by the sheriff.    On the 8th of December, 1891,
he sold under the assessment repudiated by the plaintiff,
and George W. Patton became the purchaser thereof for
the taxes of 1889.    Continuing the sales of the 9th of De-
cember, 1891,—the next day,—he sold under the assess-
ment, which, as the bill alleges, was directed by the plain-
tiff in the first instance, and the defendant became the
purchaser for the taxes of 1890.    There is no allegation
in the bill that the paintiff paid or offered to pay the taxes
for 1890 at any time, or to any person, until after it found
its title had vested in the defendant.    The only allegation
or excuse for its negligence in this respect contained in
the bill is in these words:    "This plaintiff further alleges

that it was informed and believed that the payment by its attorney, to George Patton, the redemption of this lot sold by the sheriff at the sheriff's sale in 1891, as aforesaid, was a full and complete sale and purchase, and fully relieved said lot from any alleged delinquency for the nonpayment of the taxes thereon." There is no allegation as to when this redemption was made of Patton, but it is left to inference that it was made within the year, and not effected after the year for the purpose of furnishing a pretext to attack defendant's deed. Plaintiff fails to allege who gave it the information, and caused it to believe it had fully redeemed the lot from forfeiture. This is a matter material, for, if it was done by the State's officers or the defendant, it might furnish some grounds of complaint, but, if done by its own agents, it would have none. In addition, the receipt, which is exhibited with the bill, and is a part thereof, controverts this allegation, for it shows on its face that it relates only to the taxes of 1889, and the assessment repudiated by the plaintiff; and furnished the plaintiff clear information that the taxes of 1890 were not included, thus putting it completely on its guard. Inconsistent pleadings are demurrable. At least, such inconsistencies must be resolved against the pleader. The allegations of the bill, taken as a whole, show no reasonable excuse why the taxes of 1890 were not paid, nor why the lot was not redeemed from the sale therefor in the time limited by law.

The other errors alleged are that the delinquent list for the year 1890 omits to state the "estate held," or why the lot was returned delinquent, and that the sheriff's report and list of sales omits to show the amount of school district and independent school district taxes due thereon, including interest and commissions; and that, while the caption of such list shows the sale to have been made the 9th of December, 1891, the affidavit appended thereto states that the said lists contain a true account of the real estate sold during the present year, and it is not sworn to until the 12th day of January, 1892. These matters are all cured by the provision of the twenty-fifth scetion that: "No irregularity, error or mistake in the delinquent list of sales filed with the clerk of the county court or in the

affidavit thereto, or in the recordation of such list or affidavit, or as to the manner of laying off any real estate so sold, or in the plat, description or report thereof made by the surveyor or any other person, shall, after the deed is made, invalidate or affect the sales or deed." *Winning* v. *Eakin*, 44 W. Va. 19 (28 S.E . 757). The allegations of the bill not presenting any materially prejudicial and misleading irregularity as to what portion of the lot was sold, and when, and for what years, it was sold, or the name of the purchaser thereof appearing on the face of the proceedings in the office of the clerk of the county court, by which the plaintiff was prevented from redeeming the same, it was demurrable for want of equity The bill, taken as a whole, simply means that the plaintiff neglected to pay the taxes on its lot for the year 1890. It was returned delinquent and published as such. It was then certified bv the auditor for sale. Publication thereof was duly made according to law. The sale was made, and publication thereof made. One year passes by without redemption, and a deed is executed to the purchaser, and placed upon the records. Upwards of three years thereafter plaintiff files his bill, and asks a court of equity to find some excuse for its negligence, for the reason that the purchaser obtains a valuable lot for the inconsiderable sum of seven dollais and one cent. This the court cannot do in violation of the express inhibition of legislative enactment. Every person, it matters not how many hands it has passed through, nor the value thereof, holds his land under at least the fiction of an original grant from the people under the implied condition that he will pay the taxes assessed thereon for the purpose of maintaining the laws which secure to him the possession and enjoyment of his estate, and, if he fails, that such land shall return by forfeiture to the original grantor, and be granted to some one else, who will comply with the conditions of the grant. This is certainly just to the grantee. There can be no absolute holding of land independent of the will of the people, any more than there can be absolute life independent of the will of the Creator. All that the owner can ask is a reasonable time in which to pay his taxes, and, if he neglects to do so, a reasonable time in which to

redeem his land from the consequent forfeiture. This the law affords him, and, in addition thereto, if he has been misled by the error of its officers to his prejudice, it avoids a deed resulting from their misconduct; otherwise, he must abide the result of his own negligence. A man may lose his life by the slightest carelessness. So he may lose his land by gross neglect. In both cases his rights pass to others; it may be, to strangers. The vigilant, and not the indolent, are the favorites of equity. The Legislature, in its wisdom, has seen fit to curtail the powers of the courts in relation to tax sales, and by its enactments such sales must be governed. The tender provided for in section 25 should be kept good, and the money brought into court, that it may be turned over to the defendant in case the deed is avoided; and no relief should be granted until this is done. For the foregoing reasons the decree complained of is set aside, the demurrer to the bill sustained, and the case is remanded to the circuit court, with directions to allow the plaintiff to amend its bill, if it wishes to do so, and, if not, to dismiss it.

*Reversed.*