## CHARLESTON.

BOGGESS *v*. SCOTT *et al.*

Decided November 24, 1900.

1. TAX SALE—*Deed—Chancery Jurisdiction.*

Chancery has jurisdiction of a suit to annul a tax sale before deed made, or to annul a sale and deed under it. (p. 319).

2. LAND—*Assessed in Two Names—Sale—Title.*

Where land is assessed for taxes in the name of a former owner after its sale by contract, conferring only equitable title, or after a conveyance passing legal title to another, and the land is also assessed for the same year in the name of such purchaser, a sale for taxes in the name of such former owner will vest no title in the tax purchaser. (p. 320).

3. EQUITABLE TITLE—*Saves from Tax Sale.*

If one attempts to convey land to another, but from want of a seal the instrument does not pass legal title, it still confers equitable title; and assessment of the land in the name of the purchaser under such contract or conveyance will save it from a tax sale in the name of such former owner, as such sale passes no right to the tax purchaser. (p. 320).

4. CONVEYANCE—*Equitable Estate—Assessment.*

If A. attempts to convey land to B. in trust for the use of C., but for want of seal the instrument is not a deed, and passes no legal title, still it vests an equitable estate in C., and assessment of the land in his name is good to save it to C. from a tax sale in the name of A. (p. 321).

5. CONVEYANCE BY TRUSTEE—*Signature.*

Where a deed in its body shows that the grantor conveys in the character of trustee, the deed is good as a deed from such trustee, though his signature has not added to it the word "trustee." (p. 322).

6. SEVERAL TRACTS ASSESSED—*As a Whole.*

The assessment as a whole or entire tract of several tracts of land not contiguous, instead of by separate tracts, will be good to save the land on a tax sale in the name of a former owner. (p. 323).

7. OWNER IN POSSESSION—*Assessment—Deed.*

An assessment for taxes of a tract of land in the name of an owner who himself or by tenant is in actual possession is a valid and regular assessment, whether he has legal or equitable title, and will save the land to him from a tax sale in the name of a former owner from whom such owner in possession derived his right. (p. 324).

8. TAX SALE—*Affidavit—Irregularity—Deed.*

No irregularity in the affidavit to a list of lands sold for taxes will, after deed made and recorded, invalidate such deed, but it is otherwise before such deed is made. (p. 324).

9. CONVEYANCE—*Record—Purchaser—Tax-Sale.*

Where land is conveyed from one to another, and is actually put on the tax books in the name of the purchaser, though such purchaser did not direct the transfer to his name, such assessment is as valid to save his estate from a tax sale in the name of some one else as though he had himself directed such transfer on the tax books to his name. (p. 322).

10. ASSESSMENT—*Trustee—Former Owner.*

The assessment of land with taxes, either in the name of a trustee of a *cestui que trust* under him, is valid to save the land to him from a tax sale in the name of a former owner from whom such trustee derived right, whether that right be legal or equitable. (p. 322).

11. DELINQUENT LANDS—*Affidavit—Oral Evidence.*

If an affidavit of a sheriff to a list of sales of delinquent lands is irregular, in not showing that the sheriff had no interest in the sale, the irregularity cannot be cured by oral evidence of his want of such interest. (p. 324).

Appeal from Circuit Court, Doddridge County.

Suit by E. S. Boggess against B. J. Scott and A. T. Pratt. Judgment for defendants, and plaintiff appeals.

*Affirmed.*

M. H. WILLIS, for appellant.

W. S. STUART, for appellees.

BRANNON, JUDGE:

John R. Boggess owned several tracts of land in Doddridge County, among them one of one hundred and eight acres. In 1886 he conveyed fifty-three and one-half acres of that tract to Mary R. Starkey. By an instrument calling itself a deed, dated 1st April, 1890, Boggess conveyed to C. A. Boggess, in trust for Wheeler Boggess, three tracts, one of one hundred and eighty-three acres, one of two hundred acres and one of fifty-three and one-half acres, the last tract being the residue of the one hundred and eight acres after the conveyance of part of it to said Starkey. The said conveyance from John R. Boggess to C. A. Boggess, trustee, was recorded April 17, 1890. The said tract of one hundred and eight acres was charged on the land book of 1891 with taxes in the name of John R. Boggess, notwithstanding it had been conveyed away by him to said Starkey and said C. A. Boggess, trustee, and it was returned delinquent and offered for sale for said taxes of 1891, and Scott purchased sixty acres of the tract at such tax sale, and under this tax sale on January 8, 1895, he took a deed for fifty-three and one-half acres, and on the 9th of February, 1895, Scott conveyed a half interest in the sixty acres to Pratt. On the tax book of the same year, 1891, Wheeler Boggess was charged with the said three tracts conveyed by John R. Boggess to C. A. Boggess in trust for the benefit of Wheeler Boggess, the charge being, not by separate tracts, but as one tract of four hundred and thirty-six and one-half acres. The taxes under this charge were paid. By deed dated 30 August, 1890, recorded 13 September, 1890, C. A. Boggess as such trustee conveyed to Wheeler Boggess the three tracts which had been so conveyed to said trustee by John R. Boggess. Wheeler Boggess conveyed said fifty-three and one-half acres to Davis, and it was sold from Davis under decree of court to Dolan and conveyed to him, and Dolan conveyed said fifty-three and one-half acres to E. Stringer Boggess by deed dated 20 May, 1896. In 1894, Jarvis, as a creditor of John

R. Boggess, brought a chancery suit attacking as voluntary and void as to creditors of John R. Boggess the said conveyance from John R. Boggess to C. A. Boggess, trustee for Wheeler Boggess, and that suit resulted in a decree declaring said conveyance voluntary and 'void as to such creditors, and the said tracts of land were sold under said decree to said E. Stringer Boggess, and conveyed to him under said sale by deed dated 30 January, 1898. Thus E. Stringer Boggess derived title to said fifty-three and one-half acres in two modes, as above stated. Said E. Stringer Boggess, in May, 1898, brought this suit against said Scott and Pratt to set aside and annul the said tax deed to Scott, as well as the conveyance from Scott to Pratt, and the court having entered a decree annulling said tax deed to Scott and the deed from Scott to Pratt, they have appealed to this Court.

The case involves simply the validity of that tax deed. The appellants contest the jurisdiction of equity to entertain this suit to cancel the tax deed and remove the cloud produced by it over Boggess' title, claiming that the plaintiff must, to sustain such jurisdiction, be in actual possession, and so state in his bill. That such is the general rule of jurisdiction of suits to remove cloud over title, is admitted; but under the decisions in this State a suit to set aside a tax deed is an exception to that rule. *Simpson* v. *Edmiston,* 23 W. Va. 675; *Forqueran* v. *Donnally,* 7 W. Va. 114; *Jones* v. *Dils,* 19 *Id.* 759; *Orr* v. *Wiley,* 19 *Id.* 150; opinions of DENT, JUDGE, in *Christian* v. *Vance,* 41 W. Va. p. 757, and of BRANNON, JUDGE, in *Cecil* v. *Clark,* 44 *Id.* p. 670, and *Clayton* v. *Barr,* 34 *Id.* 296. So, we must consider this question of jurisdiction as closed in this Court.

I think it clear that the tax sale cannot stand. Why? Because chapter 31, section 25, of the Code, gives the tax deed force to confer upon the tax purchaser only such right or title as was vested in the person charged with the taxes at the commencement of, or at any time during the year or years for which the taxes were assessed, and John R. Boggess had no title to the land at any time in the year 1891, having devested himself of title by his deed to C. A. Boggess of April 1, 1890. The assessment in his name was an erroneous assessment, one contrary to law, as the deed from John R. Boggess to E. Stringer Boggess was on record. Now, at common law that assessment would be null and void, because, at the commencement of the assessment year, there was no title in John R. Boggess, and the assessment in his

name would be void. It is true that section 25 changes that rule so far as to say that if the land be charged in the name of one person and sold, the purchaser shall get the title of any one else who has not been charged with the land in his own name; but that provision does not apply in this case, for the reason that Wheeler Boggess, the substantial owner of that land during all of the year 1891, was himself charged with it. The State received her taxes once on this same land under the same title from Wheeler Boggess, and she can ask no more, nor can a purchaser from her for the taxes in the name of John R. Boggess have any better right than the State. In *Bradley* v. *Ewart,* 18 W. Va. 598, it is held that where land is charged in the name of the party, who, by the record of deeds, appears to be the owner, and by mistake or otherwise the land is charged on the tax books in the name of the former owner, and the taxes are paid by the second owner in his own name, a sale for the taxes of the same year, in the name of the former owner, will be void. In *Whitham* v. *Sayers,* 9 W. Va. 671, the same doctrine is substantially held. The assessment being unwarranted by law renders the tax sale void. *Cunningham* v. *Brown,* 39 W. Va. 588.

But in opposition to this view it is claimed that the assessment in the name of Wheeler Boggess, which is so potent to nullify the assessment in the name of John R. Boggess, cannot have such force, because the deed from John R. Boggess to C. A. Boggess, trustee for Wheeler Boggess, is no deed, since it has no seal, and passed no title, but left the legal title still in John R. Boggess. The law seems to be that a deed must have a seal to pass technical legal title. 9 Am. & Eng. Ency. L. (2 Ed.) 147; but the question here is not one of technical legal title. On the contrary, it is merely a question whether an assessment of land in the name of the substantial owner, though he have no legal title, but has an equitable title, operates to save the land from a delinquency in the name of the party who holds the technical legal title only in trust for the benefit of the party holding such equitable title.

We must remember that we are in a court of equity, and that court regards the owner of the equitable title as the real owner, and says that all that the State can ask is one payment of taxes on a particular tract of land in one year, no matter whether it be in the name of the owner of the legal title or one holding equitable title derived from that same legal title. It does not require a legal title assessment to save the land from delinquency

for taxes in favor of the equitable owner, who himself pays taxes under an assessment in his own name. John R. Boggess held the shell, Wheeler Boggess the kernel. This Court said in *Whitham* v. *Sayers,* 9 W. Va. 671, that if the record of deeds show who is the equitable owner of land, and the assessor taxes it to that equitable owner, he ought not to tax it to the person who holds the legal title for the benefit of the equitable owner, and if he does so, a sale for taxes under such illegal assessment will be void, and a deed under it avoided. Such is this case. John R. Boggess merely held the dry legal title in trust for Wheeler Boggess. *Lohrs* v. *Miller,* 12 Grat. 452, tells the same principle. The State is not entitled to double taxes on the same land under the same title. A man cannot be held to lose his estate under the rigid principles applicable to tax titles from such an unjust cause. In fact, the taxes on this land 'for 1891 were actually paid by Wheeler Boggess under one and the same title and right, and as held in *Gerke Brewing Co.* v. *St. Clair,* 46 W. Va. 93, and everywhere else, actual payment of the taxes for which a tax sale is made nullifies the sale. Such is the letter of section 27, chapter 31 of the Code; such is the general law without any statute. It is true that section refers to the taxes against the party in whose name the sale is made, and not to taxes in another name; but I mean that there should be but one assessment under the same title, and but one payment can be demanded, and that the taxes on that tract were paid once, and that equity will consider the whole demand against that land as satisfied. Now, though that conveyance, for want of a seal, does not pass technical legal title, yet it passes equitable title, vests such title in Wheeler Boggess, and a court of equity would compel the conveyance of the legal title so as to cure the defect of want of seal. It is a covenant to convey, an executory contract to pass the legal title, because the party has attempted to convey the legal title, but owing to an omission has failed to do so. Therefore, equity looks upon Wheeler Boggess, for such a purpose as is involved in this case, as the real owner. These principles will be found stated in *Atkinson* v. *Miller,* 34 W. Va. 115, and in argument in *Pratt* v. *Clemens,* 4 W. Va. p. 449, and in 1 Peters 1, and in 1 Devlin on Deeds, section 246.

Another objection made for Scott and Pratt to show that there was no authority for the assessment of the land in 1891 to Wheeler Boggess is, that the deed from C. A. Boggess, trustee,

to Wheeler Boggess is one by C. A. Boggess in his own right, not as trustee. This position cannot be sustained. The deed runs: "This deed made this 30th day of August, 1890, between Charles A. Boggess, trustee, of the county of Harrison, in the State of West Virginia, of the first part, and Wheeler Boggess, of the same county and State, of the second part, witnesseth: that in consideration of one dollar, the receipt whereof is hereby acknowledged, and other considerations, the said party of the first part doth grant unto the said party of the second part." This is strictly a deed by the trustee in its formal parts, though the word trustee does not follow the signature at its close. The body of the deed tells us in what character or capacity C. A. Boggess conveys, and it is useless to add the word trustee at the bottom, though generally done That would simply further manifest what the body of the deed sufficiently states. *Heffernan* v. *Harvey*, 41 W. Va. 766. And moreover, though out of the case to say so, if the legal title be in a man in trust, I would think that a deed of grant from him would pass that title, all title in him, at its date, by operation of section 2, chapter 72 of the Code, and section 8, chapter 71. *Turk* v. *Skiles*, 45 W. Va. 82.

Another point made for Scott and Pratt is that the deed from John R. Boggess to C. A. Boggess, trustee, was held void as to creditors in the Jarvis suit. What effect has that in this case? None, for two reasons. The first is that the assessment of the land in Wheeler Boggess' name was made in 1891, years before even the Jarvis suit was brought, and surely at that time the right of Wheeler Boggess as *cestui que trust* under the deed from John R. Boggess to C. A. Boggess, trustee, was intact from the later decree, standing as if no such suit had ever been brought. The second reason is that even if the decree declaring said deed voluntary and void as to creditors had been rendered prior to the assessment in 1891 in Wheeler Boggess' name, it would not impair that assessment, for the reason that the decree held the deed void only *sub modo,* that is as to creditors, not totally void, giving Wheeler right to redeem from the debts, and leaving in him a title amply sufficient to warrant its entry on the tax books.

Another point made for Scott and Pratt is that it is not shown that Wheeler Boggess ever ordered a transfer of the land on the tax books from John R. Boggess to anyone. That makes no difference. It was, in fact, on the tax book in Wheeler Bog-

gess' name, as I think it ought to have been, and he ratified
that transfer by paying the taxes under it. So that land is on
the tax books, that is enough to save it from delinquency in an-
other name, if the charge is in the name of a person entitled to
have it entered on the tax books. The recorded deeds made C. A.
Boggess appear to be owner as trustee, and Wheeler Boggess
owner as beneficiary under that trustee, and the assessment for
the taxes should have been thereafter, not in the name of John R.
Boggess, but in the name of C. A. Boggess, trustee; but an assess-
ment in the name of either the trustee or the beneficiary is
plainly sufficient to prevent the destruction of the estate of
Wheeler Boggess from a wrongful assessment in John R. Bog-
gess' name.

Another point made against the assesment in Wheeler Bog-
gess' name is, that it was not by separate tracts, but as a whole,
four hundred and thirty-six and one-half acres. If the tracts
did not lie contiguous, a separate assessment of them would be
more regular; but section 25 of chapter 31 of the Code gives the
purchaser for taxes good title, notwithstanding such irregularity,
by providing that "if more than one tract of land be charged as
one * * * * all such right, title, interest and estate therein as
is hereinbefore mentioned shall nevertheless pass to and be
vested in the grantee in such deed." Clearly, under this pro-
vision, if a sale for taxes has been made in the name of Wheeler
Boggess, the purchaser would get his right, notwithstanding such
irregular assessment of three tracts as a whole. The converse
ought to be true. That assessment should be adequate, and is
adequate, to save Wheeler Boggess' right from loss because of the
assessment in John R. Boggess' name. If good for the one side,
it would be good for the other.

I should have stated above, in connection with the efficacy of
the assessment in the name of Wheeler Boggess, that in as much
as the deed of John R. Boggess to C. A. Boggess, trustee for
Wheeler Boggess, created only a dry trust in the trustee, what-
ever its character, legal or equitable, with the absolute use and
benefit in Wheeler Boggess, giving him right to possession,
though the deed from John R. Boggess had no seal, and only
amounted to a contract to convey by a formal deed, and Wheeler
Boggess being thus entitled to possession, and being in posses-
sion, the entry in his name would be regular under section 37,
chapter 29, Code 1891, directing land to be charged on the land

book in "the name of the person who, by himself or his tenant, has the freehold in his possession."

Thus, I dismiss the subject of the validity of the assessment in Wheeler Boggess' name with the statement that it is not only sufficient to save the land to Wheeler Boggess, and those claiming in privity with him, under the liberal principles of courts of equity, but that such assessment is strictly regular and proper.

Counsel for E. Stringer Boggess makes the point that the tax deed is void for the reason that the sheriff's affidavit to the sale list is defective, because it omits the statement that the sheriff had no interest directly or indirectly in the purchase of any of the real estate sold by him, as required by sections 12 and 13, chapter 31, Code 1891. It is hardly necessary to discuss this point, though arising on the record, because ample reason to hold the tax sale void on another ground is stated above. The cases of *Jackson* v. *Kittle,* 34 W. Va. 207; *Hays* v. *Heatherly,* 36 *Id.* 613; *Baxter* v. *Wade,* 39 *Id.* 281, say that this defect is fatal before deed made under the tax sale, entirely sufficient to prevent or enjoin the execution of a deed under such sale. This stands on the reason that at common law such a defect would kill sale and deed; and in as much as section 25, chapter 31, Code 1891, is curative only of irregularities after the proceedings have progressed uncontested down to the execution and recordation of the deed, that section does not help or change the common law rule until after deed made and recorded. It is true that *Phillips* v. *Minear,* 40 W. Va. 58, makes this defect fatal even after deed made, and under that decision the deed in this case would be utterly void. In *Winning* v. *Eakin,* 44 W. Va. 19, 21, I expressed dissatisfaction with the case of *Phillips* v. *Minear* on account of the sweeping broad character of the curative provisions of section 25, chapter 31. I remain still under the same doubt of the correctness of that case, and I interpret the case of *Gerke Brewing Co.* v. *St. Clair,* 46 W. Va. 93, as logically overruling the case of *Phillips* v. *Minear.* I think that the clause in said section twenty-five making good a tax deed against defect "in the list of sales filed with the clerk of the county court, or in the affidavit thereto," and other provisions, would protect such deed against this irregularity.

As to the defect in the affidavit of the sheriff, it is contended that it might be supplied by oral proof of non-interest in the sheriff. I have no idea that it can be so cured. The sheriff's

non-interest must be shown in the mode pointed out by statute, in the affidavit as part of the record of the tax sale proceeding.

Seeing no error in the decree of the circuit court, the same is affirmed.

*Affirmed.*