# CHARLESTON.

## TOTTEN *v.* NIGHBERT.

Submitted January 18, 1896—Decided March 28, 1896.

1. APPEARANCE—WAIVER.
    When an original or amended bill is filed in court, by leave thereof, and the defendant appears and demurs thereto, he thereby waives any objection he may have for want of process, and submits himself to the jurisdiction of the court; and he can not afterwards raise such objection in his answer, or otherwise.

2. EQUITY PLEADING—AMENDED BILL—IMMATURED SUIT.
    An amended bill is proper to bring to the attention of the court the completed right to maintain a suit which was prematurely brought on an inchoate right.

3. PUBLIC OFFICERS—ILLEGAL ACTS OF PUBLIC OFFICERS.
    The state is not bound by the unauthorized or illegal acts of its officers, nor can its title to a tract of land be transferred, divested, or affected, in any manner or to any extent, by such unauthorized or illegal acts; and all persons who deal with such officers do so at their peril, in all matters wherein such officers exceed their legitimate powers.

4. TAX SALES—PURCHASE BY STATE—ILLEGAL ACTS OF PUBLIC OFFICERS.
    Where land has been sold for taxes, and purchased for the

state, and the clerk of the court illegally places such land on the land books for succeeding years in the former owner's name, and such land is again delinquent, and sold, by direction of the auditor, for the taxes of such succeeding years, such sale is illegal and void, and the purchaser acquires no title by reason thereof; and the clerk's deed made in pursuance of such sale is wholly void, and will be set aside.

5. TITLE IN LAND SOLD FOR TAXES.
   Chapter 194, Acts 1871, is repealed by virtue of the provisions of chapter 117, Acts 1872-73, and chapter 130, Acts 1882.

J. H. FERGUSON for appellant, cited 24 W. Va. 561.

S. P. KELLY for appellee, cited Code, c. 105, s. 17; Code, c. 30, ss. 18, 19, 20; Code, c. 31, ss. 13, 19, 25; 34 W. Va. 207; 1 Black. Tax Title, §§ 121, 126; 88 Va. 259.

DENT, JUDGE:

Statement of the case by defendant's counsel.

This is an appeal from a decree of the Circuit Court of Logan county setting aside a tax deed.

In 1879 and 1880 the plaintiff, Totten, was charged on the land books of Logan county with a tract of five hundred acres of land, of which he was the owner in fee; and for both years the land was returned delinquent, and on the 15th day of November, 1881, was sold for the non-payment of the taxes thereon, and purchased for the state of West Virginia; and, Totten failing to redeem the same within the time required by law, the land thereby became forfeited, and the title of the owner thereto became and was vested absolutely in the state of West Virginia. This tract of land remained on the land books of said county for the years 1881 and 1882 in the name of Totten, and was again returned delinquent, and sold, and purchased for the state of West Virginia, and not redeemed by Totten. And, still remaining on the land books for said county for the years 1883 and 1884 in the name of said Totten, the said tract of land was again returned delinquent, and sold on the 1st day of March, 1886, for the non-payment of the taxes of those years, and was purchased at said sale by the defendant, James A. Nighbert. And, the said plaintiff failing to redeem the same within one year, the said purchaser on

the 21st day of September, 1887, obtained his deed for the land from the clerk of the county court of Logan county, in due form of law.

March rules, 1891, plaintiff filed his original bill, to which defendant demurred. Demurrer sustained, and plaintiff, by leave of court, on 28th April, 1891, filed his amended bill; and on the 1st day of August defendant appeared, and demurred to the amended bill. On the 27th of October, 1891, defendant filed his answer. On the 26th day of April, 1892, the court overruled the demurrer to the amended bill, and permitted the plaintiff to amend it by the addition of another clause. As this last amendment in no wise affects the decision of this case, it is unnecessary to notice it any further.

The material allegation in the amended bill is as follows, to wit: "The above named plaintiff, by way of amendment to his original bill of complaint herein, further complains, and says that he adopts each and every allegation of said original bill not herein amended or modified, and makes the same a part and parcel hereof, as fully as if the same was herein repeated. And, further complaining, alleges that at the April term, 1889, of the circuit court of Logan county, in said state, U. B. Buskirk, commissioner of school lands for said county, filed his annual petition in said court, asking for the sale of a number of forfeited and delinquent tracts of land situate in said county, for the benefit of the school fund—among them, the said five hundred acres of land belonging to this plaintiff, mentioned and described in Exhibit F. filed with and made a part of his said original bill of complaint, which will more fully appear from a duly authenticated copy of said petition herewith filed, marked 'Exhibit 101,' and prayed to be taken and read as part of this bill; and at the April term, 1891, of the circuit court of said county, and during the pendency of the proceedings to sell said five hundred acres of land for the benefit of the school fund, this plaintiff filed his petition asking to be allowed to redeem said tract of five hundred acres of land, which the court, on inspection of the evidence of title of this plaintiff to said land, allowed; and on the 24th day of April 1891, this plaintiff paid to the said commissioner of

school lands all of the taxes, interest, costs, and damages due to the state of West Virginia on said five hundred acres of land for the years 1879, 1880, 1881, and 1882, as will more fully appear by a duly authenticated copy of the decree of redemption entered in the case in said court, herewith filed, marked 'Exhibit 15,' and prayed to be taken and read as part of this bill."

The following are the points relied on by the defendant in argument: "(1) This suit having been brought by the plaintiff when he had no legal or equitable right, title, or interest in, or claim to the five hundred acres of land in question, the court below had no jurisdiction, power, or authority to grant him the relief, or any part thereof, prayed for in his bills, or either of them. (2) The sale of the five hundred acres of land in question for the non-payment of the taxes assessed thereon for the years 1883 and 1884, at which sale the defendant became the purchaser thereof, was a legal and valid sale of said land to him; and the court below erred in setting aside the said sale, even if it had jurisdiction to do so, but which it had not. (3) The tax deed by which the clerk of the county court of Logan county conveyed the five hundred acres of land in question to James A. Nighbert, the purchaser thereof, was and is a good and valid deed, under the statute; and the court below erred in setting it aside, even if it had jurisdiction to do so, but which it did not have."

It is unquestionably true that this suit was instituted at a time when plaintiff had only an inchoate or incomplete right to bring the same. He had the statutory right to file his petition and redeem the land, which he did after the institution of the suit. In the case of *Butler* v. *Butler*, 4 Litt. (Ky.) 202, it is said: "It will be admitted that the trial of an issue in a court of common law determines upon the controversy as it stood at the commencement of the action, except such issues as are founded on the plea of *puis darrein continuance*, and that if there was, at the commencement of the suit, no cause of action, it is fatal, however strong it may have become afterwards. But the rule in a court of equity is somewhat different. The chancellor is not tied down to such strictness as to refuse relief in all cases where

the bill was filed prematurely.   Redress may sometimes be given in such case, and the costs of the suit may be imposed on the complainant, which accrued before the cause of complaint had arrived at maturity, as a penalty upon his haste.   Still, however, it is necessary, by an amended bill or new pleadings, to state the supplemental events which have completed the cause of suit, in order that the chancellor may know from the pleadings that such events have transpired, for the decision of the chancellor settles the matters of contest as they stood at the time the issue was joined."   See, also, *Leach* v. *Gentry,* 1 J. J. Marsh. 349; Story, Eq. Pl. 885; *Luft* v. *Gossrau,* 31 Ill. App. 530; *Buck* v. *Buck,* 11 Paige, 170.

The amended bill is precise in its object with the original bill, and departs in no particular therefrom, except to introduce new matter which renders plaintiff's inchoate right to sue complete.   The purpose of the suit is solely to cancel the defendant's tax deed to the land in controversy, for illegality.   The state could have instituted this suit before the plaintiff redeemed the land.   *State* v. *Eddy,* 41 W. Va. 95 (23 S. E. 529).   The plaintiff could have filed a supplemental bill or an original bill setting up his completed right.   Equity looks not to the name, but to the substance, to determine the character of the paper filed.   *Strum* v. *Fleming,* 22 W. Va. 412; *Lamb* v. *Cecil,* 28 W. Va. 657. Following these decisions, it does not matter whether we regard the plaintiff's amended bill as a supplemental, amended, or an original bill, as the result must be the same.   Defendant was not bound to appear to such bill until served with process, but having appeared and entered a demurrer, thereto on the 1st day of August, 1891, thereby avoiding the necessity for summons, he waived his right to object for failure thereof, and was as completely under the jurisdiction of the court as though summons had been duly served upon him, and was allowed and exercised full opportunity to interpose all his defenses to plaintiff's suit.   For this reason his first objection must be overruled.

His remaining objections to the decree are so dependent on each other that they will be considered together.   It is admitted, in accordance with the plain letter of the law,

that after the land in controversy had been twice returned delinquent, sold and purchased by the state, the state became the indefeasible owner thereof, except as to the mere statutory privilege accorded to the plaintiff, of redeeming the same. *McClure* v. *Maitland*, 24 W. Va. 561. Such being the case, the clerk of the county court of Logan county had no authority to place the land on the land books for the years 1883 and 1884, but he is expressly forbidden so to do by section 23, chapter 12, Acts 1881. His unlawful conduct in so doing vitiated. and rendered invalid, all subsequent proceedings which led up to defendant's purchase. All the subsequent acts of the state officers in returning such land delinquent, ordering the sale thereof, and the selling of the same, and the deed to the purchaser, were in disobedience of law, and wholly null and void. The state is not bound by the acts of its officers in excess of their powers, and every person dealing with an officer must, at his peril, ascertain the extent of such powers. Throop, Pub. Off. § 551; Story, Ag. § 307a; Mechem, Pub. Off. § 512. The doctrine of *caveat emptor* applies in full force to all tax sales. The state can not be divested of its title by the illegal acts of its officers. The defendant took nothing by his deed. He purchased at his own risk.

It has been suggested that his deed might be valid by virtue of chapter 194, Acts 1871. It is entitled "An act to amend the law relative to real estate hereafter sold for taxes," and is to the effect that purchasers such as the defendant should, by virtue of their deeds, be fully vested with the state's title. From its purview and title, this act was undoubtedly intended to be an amendment to chapter 31, Code 1868, relating to the sale of real estate for taxes. There is no other law relative to real estate sold for taxes. The act was intended to apply to subsequent, and not to prior, sales. After the adoption of the present Constitution, chapter 31, Code 1868, was wholly re-enacted by chapter 117, Acts 1872-73, styled "An act to amend and re-enact chapter thirty one of the Code of West Virginia, concerning the sale of real estate for taxes; forfeiture for non-payment and non-assessment of taxes, and the transfer of title vested in the state." In this chapter no re-

ference whatever is made to chapter 194, Acts 1871, or the provisions therein contained. By the last section of chapter 117, Acts 1872-73, "all acts or parts of acts inconsistent" therewith are repealed, which necessarily must include chapter 31, Code 1868, and all amendments thereto, including chapter 194, Acts 1871. Chapter 130, Acts 1882, is styled "An act amending and re-enacting chapter thirty one of the Code of West Virginia as amended and re-enacted by chapter one hundred and seventeen of the Acts of One thousand Eight Hundred and Seventy Two and Seventy Three," the last section of which provides that "all acts and parts of acts coming within the purview of this act and inconsistent therewith, are hereby repealed. This language is certainly broad enough to include chapter 194, Acts 1871, even though it were not considered an amendment to chapter 31, Code 1868. Its inconsistency is also palpable, as the provision of chapter 130, Acts 1882, vests in the state the title to delinquent lands, when purchased for it, and provides the manner in which such title can be divested, and there is no similar provision to that contained in chapter 194, Acts 1871. On the contrary, in accordance with section 4, Art. XIII, of the Constitution, it is provided in section 41, "All lands in this state, waste and unappropriated or heretofore or hereafter for any cause forfeited or treated as forfeited or escheated to the state of Virginia, or this state, or purchased by either and become irredeemable not redeemed, released, transferred or otherwise disposed of, the title *thereto* shall remain in this state till such sale as is hereinafter mentioned be made, shall by proceedings in the circuit court of the county in which the lands or a part thereof are situated be sold to the highest bidder." This section is identical with the section in the Constitution, except "thereto" is substituted for "whereto." Both sections are so drawn as to render the meaning rather obscure, but the evident meaning appears to be that the title to all such land described, as had not been before otherwise disposed of, should remain in the state until sold to the highest bidder in the manner provided; thus clearly intending to prevent the restoration of such lands to the land books by the clerks of the county courts after they

had once been purchased for the state, and the divesting of the state's title by irregular and illegal proceedings—in other words, to prevent the law from being contradictory in itself, so as to render some of its most salutary provisions wholly nugatory, at the will of the clerks of the county courts. To forbid such clerks to place the lands of the state on the land books, yet at the same time to say, "If you do happen to do so, in the name of some former owner, and they be returned delinquent, and sold for taxes for any one year, the purchaser shall have the state's title," is to open wide the door to questionable speculation at the expense of the state, and to the detriment of the collection of delinquent and unpaid taxes. By the positive enactments referred to, chapter 194, Acts 1871, has been repealed, and is not the law of this state.

The defendant's deed being a nullity, and a cloud on the plaintiff's title, the court committed no error in the decree complained of, as against the defendant, and the same is therefore affirmed.