# CHARLESTON.

HOLT *v.* KING, *et al.*

Submitted June 13, 1903—Decided December 12, 1903.

1. TAX SALE—*Assignment of Certificate.*

    A person holding a vendor's lien on a certain tract of land, which has been sold for the nonpayment of the taxes, proposes to the purchaser, within the year of redemption, to redeem the same; and such purchaser informs him that a subsequent lienor has demanded the right to and is going to redeem, and he afterwards informs the subsequent lienor that the prior lienor wanted to redeem, but that he preferred to allow him to make the redemption. He is then induced by such subsequent lienor, who was fully aware that the prior lienor expected him to make the redemption, to execute an assignment to him of the sheriff's certificate on payment of the redemption money, which assignment is kept secret, and no notice thereof, either by the purchaser or the subsequent lienor, is given to the prior lienor until the redemption period has elapsed —a court of equity, on application of the prior lienor, will hold such assignment to be a mere redemption of the property, and will enjoin the subsequent lienor from obtaining a deed therefor from the clerk of the county court. (p. 443).

2. REDEMPTION—*Fraud.*

    If a purchaser of delinquent lands represents to a prior lienor, desiring to redeem the same, that a subsequent lienor demands the right to and is going to make such redemption, and afterwards such purchaser secretly assigns the sheriff's receipt to such subsequent lienor, and fails to advise the prior lienor of such assignment until too late for him to make redemption, such conduct on the part of the purchaser is fraudulent. and, if the subsequent lienor knowingly accepts and retains the benefits of such fraud, he will be held equally guilty with the pur-

chaser, especially if he is the moving cause of such purchaser's conduct though he may be entirely free from intentional wrong or *mala fides*. (p. 444).

Absent, Brannon, Judge.

Appeal from Circuit Court, Lewis County.

Bill by M. S. Holt against John King and others. Decree for defendants, and plaintiff appeals.

*Reversed.*

LINN, BYRNE & CATO, for appellant.

W. W. BRANNON, for appellees.

DENT, JUDGE:

M. S. Holt filed his bill in the circuit court of Lewis county against John King, W. W. Brannon, and E. A. Bennett, clerk of the county court of Lewis county, for the purpose of setting aside a tax sale of 100 acres of land to said King, and the assignment thereof made by him to said Brannon, and to prevent the clerk of the county court from making a deed therefor. Plaintiff bases his right to maintain this suit on the fact that he has a purchase-money lien against the land, and therefore had the right to redeem the same, but he does not seek to enforce such purchase-money lien. It appears, however, that there are suits pending already in which this may be done. The prayer of this bill is that plaintiff "may be awarded an injunction against the said E. A. Bennettt, clerk of the county court of Lewis county, restraining him from making such deed to said W. W. Brannon, and that said W. W. Brannon may be enjoined and restrained from taking such deed or further proceeding to obtain the same, and that he may have a decree declaring the said land redeemed, and the said assignment canceled and annulled, and that he have his costs, and such other, further, and general relief as the court may see fit to grant." Defendant Brannon appeared, entered a demurrer, and filed an answer to the bill, claiming that he purchased the land, and did not redeem it, and denying the right of plaintiff to the relief prayed. Depositions were taken by both parties, and on a final hearing the court dismissed the bill.

Plaintiff admits in his bill that he knew of the delinquency

and sale of the land, and that he intended redemption of the same, but, being informed that the defendant Brannon intended to redeem, he acquiesced therein. He then alleges various irregularities in the delinquency and sale of the land, sufficient to vitiate the same. As to these he should not be heard to speak, as he was in no wise misled by them, and had ample opportunity to redeem notwithstanding such irregularities. He knew the land had been returned delinquent, that the taxes were unpaid, that it was sold, and who the purchaser thereof was, in time to have asserted his rights. Against his own neglect a court of equity will afford him no relief.

The controversy therefore narrows itself down as to whether defendant Brannon redeemed or purchased the land, and, if the former, whether plaintiff has the right to maintain this suit to have such redemption declared, or to be permitted to redeem such land. A lien creditor, under section 15, chapter 31, Code 1899, has the privilege of redemption; but he is under no obligation to do so, and may waive such privilege and become a purchaser. But he cannot do both at the same time. That is, he cannot take advantage of the right to redeem in so far as the purchaser at the delinquent sale is concerned, and yet claim to be a purchaser in so far as the land owner or other lienors are concerned. A redemption, by whoever made, inures to the benefit of the land owner, and hence to all lien creditors, as it relieves land from tax delinquency, as though it had never occurred. While a purchase deprives the landowner and all other lienholders of all claim or title to the land, unless redeemed within the limit fixed by law. It would therefore be unjust to allow a lienholder, or even one claiming to be a lienholder, to compel the tax purchaser, by virtue of the statutory privilege, to submit to a redemption of the land, and yet convert it into a purchase, as to the owner and other lienors, by taking a secret assignment of the tax purchaser's rights. An open assignment is proper to secure to the lienor the right to hold the amount of taxes as a lien upon the land, or even to take the title in trust for this purpose, but not to give the lienor taking advantage of his statutory privilege of redemption the right to hold absolute title to the property. The defendant Brannon, in his evidence, states the manner in which he obtained from the tax purchaser an assignment of his rights as follows, to-wit: "I talked with Mr.

King about redeeming of him, and he was inclined to refuse the offer, and I said, 'Now, Mr. King, I have concluded to redeem the tract,' or words to that effect, and 'I will make you a tender of the amount of money necessary if you require it, or will give you my check,' or words to that effect; and he said my check was alright, and he would make no question about that, but that he would refuse the offer. I then told him that his refusal was all right, and I had no complaint to make against him, and that I would simply go to Mr. E. A. Bennett, clerk, and pay the necessary amount, and thereby effect the redemption. He left me, and after some time returned and said that he had seen Mr. Bennett, the clerk, who had informed him that I could redeem in the manner just indicated, and he had suggested to Mr. King that he would as well allow me to redeem, and Mr. King said, 'I am willing to let you redeem it.' I then said to Mr. King, in the presence of Mr. R. L. Zinn, who was performing some clerical work for me along about that time, that I would prefer that he would assign his purchase to me, so that, if anybody wanted to redeem it, they would have to pay me the money, with interest, or I would hold the land. I told him that I had already borne considerable burdens to relieve the Butcher lands from forfeiture, and that all creditors had been chiefly benefitted thereby, and I did not like to increase the amount of expenditure, and layout of the money; and he said, in the presence of Mr. Zinn, that he would just as leave assign the claim to me as not, remarking that I was offering to make him whole." This plainly shows that the defendant Brannon was not making a *bona fide* purchase of the tax purchaser, but forcing him to permit a redemption of the property, and, after convincing the tax purchaser of his legal right to make a redemption, persuaded him to make an assignment of his rights simply because he was being made whole, and could not avoid the alleged rights of defendant to redeem. Hence it should be treated as a mere statutory redemption, and not a purchase. Defendant Brannon, having paid money necessary to redeem, might take the title in his own name to secure repayment thereof, but he should hold as a trustee for the benefit of the land owner and other lienors who might otherwise be defrauded of their rights, and he obtain, by reason of his statutory privilege of redemption, an unconscionable advantage over them. Nor does

it make any difference whether defendant Brannon had the right
to redeem or not. If he did not have the right, he would be
guilty of fraud in representing that he had, and thus securing
a redemption under a false pretense. In either event he should
hold as trustee for the benefit of those interested. In taking
advantage of the statutory privilege to redeem, he puts himself
in the same position as a person whose duty it is to redeem, and
the attempt to convert a redemption by either into an absolute
purchase is inequitable, and will be avoided at the instance and
for the benefit of an interested party who has been prevented
from making such redemption. State v. Eddy, 41 W. Va. 95,
(23 S. E. 529). When the statute conferred upon a lienor the
right to redeem, it imposed upon him the duty not to assert such
right in such manner as to mislead and injure coredemptioners.
Black on Tax Titles, section 280; Fair v. Brown, 40 Iowa 209.

It is insisted, however, that Brannon owed no duty to Holt
in connection with the matter, and that he had the right to re-
deem or buy without consulting Holt. This is undoubtedly
true, if the transaction was open and free from any charge of
fraudulent concealment or redemption to deprive Holt of his
right of redemption. The indisputable facts in the case are as
follows: Holt held a lien on the land in controversy for $1,700
far more than its value. Brannon held an individual lien sub-
sequent to Holt's and which could not be reached if Holt's lien
remained. King purchased the land at tax sale. Brannon in-
sisted he had the right to, and would, redeem the land either
from King or Holt. Holt informed King he wanted to purchase
from him if it would be legal, and, if not, he wanted to redeem
the land. King informed Holt that Brannon was going to re-
deem the land. On the same day King went to Brannon to let
him redeem the land, when Brannon presuaded King, in the
presence of Zinn, his clerk and typewriter, to make him an as-
signment of his purchase for the amount necessary to redeem
the land—in the assignment recited "for valuable consideration."
Zinn, Brannon's clerk, under Brannon's direction, prepared
the assignment, and, being a notary public, took the acknowledg-
ment of King and his wife thereto. This all occurred on the 26th
of December, 1901, and the time for redemption expired on the
1st day of January, 1902. No one knew of this assignment but
the parties thereto and Zinn, Brannon's clerk. It was not put

on record. Whether there was any agreement to secrecy or not does not appear, but it does appear that the matter was kept secret from Holt by all those who were present at the making of the assignment, and it was not known to him until some time afterwards, on inquiry of the clerk. It further appears that it was to Brannon's interest to have it kept secret. His clerk testifies that Mr. Brannon said at the time of the assignment, and as inducement thereto, "that he had held up these people quite awhile, and it had been quite a burden to him, and, if they redeemed the land that they were talking about, he would be out of all his money, but that, if he purchased it, they would either have to pay him back the money, or he would hold the land." This shows it was Brannon's intention to prevent a redemption of the land, if possible. The parties so understood, and knew it was necessary, to accomplish this purpose, that the assignment should be kept a matter of secrecy from Holt until the expiration of the time of the redemption. It was so kept secret. The effect of all this was that Holt was deprived of his lien. King got nothing that he would not otherwise have gotten, and Brannon got all that Holt lost. Brannon tries to justify himself in his answer by claiming that Holt was trying to do the same thing. Holt stood on a different ground, as Brannon himself admits when he says that Holt's lien was more than the value of the property. This being true, Holt's purchase thereof, either openly or secretly, would have injured no one, while Brannon's redemption of the land would inure to the benefit of no one but Holt—the very person whom he shows by his answer and deposition he did not want to benefit. Hence there can be no other conclusion than that it was the intention of, Brannon to purchase this land and defeat Holt's lien thereon. He may have intended to do so legally, but in doing so he had no right to take advantage of any false position in which Holt had been placed by his words or conduct, whether knowingly or wilfully done or not. After Brannon found out by this suit that his language and conduct communicated to Holt by King had misled Holt and prevented him from redeeming the land, instead of obeying the Golden Rule, which, according to Jewish interpretation, "That which is hateful unto thyself do thou not to another," is the delight of equity, he retains Holt's property, and claims himself innocent of wrong. Equity looks at the results of conduct, and

not to the protestations of honest purpose. If the rule were otherwise, no fraudulent conveyance would ever be interfered with, for all men who engage in unjustly depriving their neighbors of their property first convince themselves of the legality of their conduct and the purity of their motives. This is why our books are so full of cases convicting persons of fraud, against their most solemn protestations to the contrary. *Frazier* v. *Brewer,* 52 W. Va. 306, (43 S. E. 110) ; 81 Am. St. Rep. 812 ; *Atkinson* v. *Plumb,* 45 W. Va. 626) ; *Bank* v. *Atkinson,* 32 W. Va. 203, (9 S. E. 175). The number of such cases is beyond computation. It has been said that language was invented to conceal motives and intentions, and, while this cannot be accepted as stating an axiom, yet it may be admitted that language has proven an ever-ready help in time of trouble. The law never accepts language as proof against contradicting facts and circumstances, and, when these lead to a certain conclusion, no words, however sincere, can overthrow it.

The undisputed facts in this case show that Holt has been deprived of his property by the concealment of the truth from him after he had been misled by the conduct and representations of those who have deprived him of the same, and one of whom enjoys the full benefit of his loss, and retains the same after full knowledge of the wrong suffered. "Fraud has been defined to be any kind of an artifice by which another is deceived." Pothier, cited 1 Mad. 205. All surprise, trick, cunning, dissembling, and other unfair way by which another is cheated is fraud. Collusion, in a court of equity, is fraud. 3 Atk. 757. In short, "fraud is infinite." 2 Tuck. Com. 411. The suppression of the truth is equivalent to the utterance of a falsehood, and both are frauds. 2 Tuck. Com. 415. There is no question but that King is guilty of fraud, in a legal sense, by concealing from Holt the assignment made by him to Brannon. If a person make a representation that is true, and afterwards he renders such representation false by his own act, and another is about to be deceived thereby to his injury, he is guilty of fraud, unless he corrects the delusion produced by his former representation. 14 Am. & Eng. En. Law (2d Ed). 74. In *Dickinson* v. *Colgrove,* 100 U. S. 580, 25 L. D. 618, Mr. Justice Swayne says: "The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject

such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both."

King is guilty of legal fraud, yet he derives no benefit therefrom. Why he concealed from Holt the fact of the assignment is a matter of legal inference from the effect thereof, as there is no positive testimony showing the reason therefor. If Holt had been given the opportunity, which was denied him, of cross-examining Brannon's witnesses, this matter might have been made plain. Brannon claims to be wholly innocent, yet he receives, and after full knowledge retains, the benefit of King's fraud. In section 211, Perry on Trusts, it is written: "So property obtained by one through the fraudulent practices of a third person will be held under a constructive trust for the person defrauded, though the person receiving the benefit is innocent of collusion. If such person accepts the property, he adopts the means by which it was procured, or, as Lord Chief Justice Wilmot said, 'Let the hand receiving the gift be ever so chaste, yet, if it comes through a polluted channel, the obligation of restitution will follow it.'" *Dewing* v. *Hutton*, 48 W. Va. 576, (37 S. E. 670). When Brannon found out the manner in which Holt had been deceived, if he wished to relieve himself from the many imputations of collusion apparently justified by the facts and circumstances of this case, and place his conduct above suspicion, he should have promptly afforded the opportunity to Holt to have redeemed the land, and not have waited for the interference of the court of equity. Whether he loved his enemy or not, he should have meted out to him even-handed justice. It was the duty of King to have relieved Holt from the delusion under which he was laboring by reason of the former's representations, and it was the duty of Brannon, who profited by such delusion, when he became cognizant of the manner in which Holt had been deceived, to offer him proper restitution. Holt having in this manner been deprived of his right of redemption, equity will hold that the assignment was nothing more than a redemption, and will enjoin the clerk from making a deed to the purchaser's assignee. Nor will it be necessary for the plaintiff to make a tender and keep it good, for he was prevented from so doing during the redemption period by the conduct of the purchaser and

his assignee. This is not such a proceeding under the statute to set aside for irregularities or other causes a deed obtained by a *bona fide* purchaser, wherein a tender is required. *McClain* v. *Balton*, 50 W. Va. 121, (40 S. E. 509). It is a suit instituted to estop a redemptioner from converting a redemption into a purchase in deprivation of the plaintiff's rights, and from obtaining a deed for the property which would forever conclude plaintiff as to his vendor's lien.

While the allegations of the bill are not as specific as they might be, yet they are sufficient to justify the relief sought. They set out sufficient facts to show the fraudulent conduct of King, inuring to Brannon's benefit, and that Brannon intended to retain the same to the injury of the plaintiff.

Nor has plaintiff been guilty of such *laches* as would bar his equity. The evidence shows that Brannon only redeemed the land, and that he induced the purchaser to make an assignment, which, if enforced, operated to deprive plaintiff of his vendor's lien, which was kept concealed from Holt until the time of redemption had passed.

In some states notice is required in all cases before a redemption can be precluded. Black on Tax Titles, section 329. Equity requires notice where the proposed redemptioner is about to be misled to his injury by the representations of the purchaser in collusion with other redemptioners. If Brannon had notified Holt, or directed King to have notified him, in time for redemption, he would have received his outlay back, with interest, or, if he had offered to have permitted Holt to redeem, even after this suit was brought, he would have been entitled to be remunerated for his outlay; but, as he stands on his legal rights, he is entitled to no more.

On the solicitation of Mr. Brannon through his counsel, this opinion has been revised the third time. He disclaims all disposition to wrongfully deprive Mr. Holt of his property, and that if he has been guilty of any wrong in the matter, which he in no wise admits, it is a mistake as to his legal rights. He is entitled to the full benefit of such disclaimer.

The decree is reversed, the assignment held a redemption of the land, and the injunction perpetuated.

*Reversed.*