# CHARLESTON.

## MOSSER *v.* MOORE.

Submitted September 15, 1904—Decided December 13, 1904.

1.     TAX SALE.—*Delinquent List.—Void Tax Sale.*

        A list of lands delinquent for taxes and a list of lands sold for taxes, giving no specification or description whatever of a tract or lot of land sold for taxes—utterly blank therein—are void, and render a tax sale of such tract and deed under it void, and such defect is not cured by section 25, chapter 31, Code of 1899, (DENT, J., *dissenting.*) (p. 481).

2.  TAX SALE.—*Redemption.*
    When a tax deed is vacated for irregularity in the proceedings of record, where the land is chargeable with taxes, the owner must, as a condition precedent to the vacation of the deed, pay the purchaser what is required to be paid by Code of 1899, chapter 31, section 25.   (p. 484).

3.  TAX SALE.—*Statute Construed.*
    Statutes for redemption from tax sales are to be liberally construed, to attain the end.   (p. 484).

4.  TAX SALE.—*Tender by Owner.*
    If a tax purchaser refuse a redemption, not on account of the amount of money tendered, but claiming the validity of his purchase, and refusing a tender generally, the amount of money tendered, though too small, becomes immaterial.   (p. 485).

5.  TAX SALE.—*Tender.—Mistake in Amount Immaterial in Redeeming.*
    A small deficiency in the amount of money tendered for redemption from a tax sale, attributable to mistake, will not vitiate the tender.   (p. 485).

Appeal from Circuit Court, Tucker County.

Bill by J. K. Mosser and others against J. H. Moore and others.  Decree for defendants, and plaintiffs appeal.

*Reversed.*

DAILEY & BOWERS and A. JAY VALENTINE, for appellants.

CONLEY & SMITH and TALBOTT & HOOVER, for appellees.

BRANNON, JUDGE:

Eliza E. McMillen owned three town lots, numbered 189, 190 and 191, in the town of Parsons, Tucker county. The clerk of the county court of that county, O. S. Billings, made a deed, 10th January, 1903, conveying said lots to J. H. Moore and A .A. Dorsey, which deed recites that the sheriff of Tucker county, in January, 1902, sold to Moore and Dorsey the said lots for delinquency for taxes charged against them by the town of Parsons in the name of Eliza E. McMillen for the year 1899. These lots were once owned by Ruth N. Ryder, and she gave a deed of trust on them for debt, and afterward, while said deed of trust still rested on the lots, Ruth N. Ryder conveyed them to said Eliza E. McMillen. Afterwards the lots were sold under said deed of

trust and purchased by Thomas Keck for himself and as trustee
for the benefit of J. K. Mosser and others. Then Mosser, Keck
and others, the owners of said lots, filed a bill in Tucker county
against Moore and Dorsey to set aside the said tax deed, claim-
ing that it was wholly void. They also say in their bill that after
said tax deed had been made they tendered the tax purchasers
the sum which was properly payable to them, and thus offered
to make a redemption, but that said Moore and Dorsey refused
to allow the redemption, and then said Mosser and others paid
to the clerk of the county court $27.25 as the amount paid by
the tax purchasers with twelve per cent. interest. The answer
of the defendants admits this offer to redeem, but says that the
sum offered was too little, as it did not include the cost of the
surveyor's report and the clerk's fee for making the tax deed,
which seems to be the fact. The cause was heard upon the bill
and answer and exhibits, and a decree was entered holding the
tax deed valid and that whatever defect or irregularities existed
in the tax sale were cured by the tax deed. From this decree
J. K. Mosser and his associates have appealed.

The plaintiffs contend that the lots were never returned de-
linquent for the taxes of 1899; that the lots were never adver-
tised for sale as delinquent for said taxes as required by law and
the ordinance of said town of Parsons; that such lots were never
sold for said taxes, as recited in the tax deed; and that no pro-
ceedings were had or notice given that would have given notice
to any owner of said lots or any one claiming interests therein
of any purpose on the part of the town or any public officer to
sell the same for taxes for 1899 or any other year. I suppose
that no one will deny that there must be a delinquent list in-
cluding the particular land sold for taxes. There can no more
be a sale without delinquency, and a delinquent list, than there
can be a sale without an assessment, because the statute requires
such delinquency and delinquent list. I repeat that there can be
no sale without delinquency, and delinquency to sustain a tax sale
must be proven by that delinquent list. There can be no one
thing pointed out as necessary to sustain a tax sale that is
more essential than a delinquent list, because it is the only
evidence of that without which no sale can be made, that is,
non-payment of the taxes assessed. If land is not on that list
the Code, chapter 31, section 51, says that it shall be presumed

the taxes were paid. In this case there appears a copy of a list of real estate delinquent for taxes in Parsons for 1899 certified by A. C. Scherr, state auditor, having a first column headed "Names," and a second column headed "Real Estate," and a third column headed "Amt." In the first column are the names of twenty-nine persons. including Eliza E. McMillen, and in the second column, intended for the specification of the real estate delinquent, there is not a mark, but it is entirely blank—in other words, not a tract or lot of real estate is mentioned. In the third column an amount of money stands annexed to each name, that annexed to the name of Eliza E. McMillen being $18.14. We suppose that the taxes chargeable to her amounted to that sum; but whether for real estate or personalty we could not say, except that the caption says that the list is for real estate; but for what real estate those taxes are charged and delinquent we are left utterly in the dark. It is just as though there were no delinquent list at all. That list is a nullity, vacancy. It leaves out that most essential element, specification and description of the land delinquent. In reference to the assessment list Blackwell on Tax Titles, section 223 says: "An assessment that does not identify the land is void. A description sufficient to give notice to the tax payer that his land is assessed which the legislature cannot dispense with, nor work a cure upon any proceedings defective in that regard. * * * * The test is this: Is the description sufficient to identfy the land and give notice to the owner of the assessment, or is it so defective that it might probably mislead the owner? Notice, or at least the means of knowledge, is an essential element of every just proceeding which affects rights of person or property. But how can the duty of payment of taxes be performed without the identity of the subject matter of the duty be made known to him who is to perform it, by name or description?" 27 Am. & Eng. Ency. L. 683, says: "It is essential to the validity of an assessment of real estate that it contain a description of the property sufficiently accurate and certain to enable the owner readily to identify it as his, and to furnish a basis for the tax lien, and for proceedings *in rem* against the tract, should such become necessary to the collection of the taxes." See Black on Tax Titles, section 112. Of course, this law would apply to the delinquent list. This delinquent list did not suggest to the owner of these lots

any delinquency, and therefore it would mislead; it would give no notice to them that the lots were delinquent. By law this list must be returned to the town council's office, and a copy thereof to the state auditor. Persons have right, upon exam-. ination in those offices, to be informed distinctly by that list that their land is delinquent. This list, merely from the name of Eliza E. McMillen being found on it, suggests some delinquency; but that is not enough; it must tell what delinquency. We have the authority of section 25, chapter 31, Code, for saying that if an irregularity appear on the face of the proceedings in said offices, and be such as materially to prejudice and mislead the owner of the real estate sold as to what real estate was sold, and when and for what year, it will vitiatate the sale, unless it appear clearly that but for the irregularity it would have been redeemed. A delinquent list is an essential document in the "proceedings" in those offices under that section.

Furthermore as to the sale. No sale list appears to prove the sale. If there had been such list, we presume it would have been furnished by the defendants. The bill says there was none, but the answer denies that allegation. Likely, as the deed re-cites that the lots were delinquent and sold, we have to say that some delinquent list and sale list were made and filed, as the Code, section 29, chapter 31, makes it *prima facie* evidence of its recitals.

Then, what is its character? Not only must there be such a list, because required by law, but it must have requisites of legal cartainty like assessment and delinquent lists. We can only surmise the character of that sale list, if it ever existed, from the advertisement in a newspaper by the sheriff of Tucker county of the sale for taxes under which the tax deed was made. In that section of it relating to the town of Parsons the name of Eliza E. McMillen is given in the column containing the names of persons charged with taxes, but in the column headed "Quantity of Land" there is nothing in connection with her name, nor is there in the column headed "Local Description"; but they are both blank as to property and description, and only in the column showing amounts of taxes do we find anything connected with the name of Eliza E. McMillen, the sums $23.83 for amount necessary to redeem, and $24.30 for amount of taxes, costs and fee for receipt. We are justified from this

publication in saying that the sale list was totally defect-
ive in not specifying the property sold. We are further
justified in this position by the sheriff's receipt given to the tax
purchaser for $24.30, which gives the name of Eliza E. McMillen
as a person charged with taxes, and leaves blank the quantity of
land. The receipt contains no further description or specifica-
tion of the property sold than that it was in "Parsons Corpr."
which we take to mean in the town of Parsons. But what prop-
erty in no way appears. So, we say that those two essential
things are entirely wanting, a delinquent list and a sale list;
they are so utterly defective as to be no lists. There is vacancy
where there must be colorable substance; there is utter voidness
and emptiness where there should be body. Substantially there
are no lists at all. Surely we are bound to say that this want of
record would mislead the owners, because it would give them no
notice of delinquency and sale, and this being so the sale is not
good, by the Code and by cases cited below. Where an essential
part of the proceeding is totally wanting there is vacancy and
the proceeding is void. *Forqueran* v. *Donnally,* 7 W. Va. 114.
We cannot say that the recital of the deed from the clerk will
prove delinquency and sale, since while these deeds may be
*prima facie* evidence, the *prima facie* case is repelled by evi-
dence showing those lists to be void, not voidable or merely de-
fective. Total failure to file delinquent and sale lists does mis-
lead. There is no warning in the place where warning ought to
be found. We go to those lists in those offices to see whether our
land has been returned delinquent and sold. *Barton* v. *Gilchrist,*
19 W. Va. 223; *Simpson* v. *Edmiston,* 23 *Id.* 675; *Gerke Brew-
ing Co.* v. *St. Clair,* 46 *Id.* 93; *McCallister* v. *Cottrill,* 24 *Id.* 173.
These lists gave no notice to the owners of the lots. The form
of delinquent list given in section 18, chapter 30, and of the sale
list, in section 12, chapter 31, Code, show that the lists in this
case do not conform to law.

It appears from the Code that irregularity in the proceedings
fixed by law leading to a sale for taxes will overthrow a sale, if
it be of a kind to mislead those interested in the land, except as
to defects cured by the Code. This follows from the language of
the Code, chapter 31, section 25, that the purchaser shall get
good title, "notwithstanding any irregularity in the proceeding
under which the same was sold not herein provided for, unless

such irregularity appear on the face of such proceeding of record in the office of the clerk of the county court,.and be such as materially to prejudice and mislead the owner." From this two things appear, namely : that such defects as mislead are fatal, and second that some defects are cured by the statute. Having. above seen that the defects in this case are such as to mislead we must see whether they are cured by the statute. It is insisted that they are so cured by the clause of section 25 reading,. "And no irregularity, error or mistake in the delinquent list or in the return thereof, or in the affidavit thereto, or, in the list of sales filed with the clerk of the county court, or in the affidavit thereto, or in the recordation of such list or affidavit, or as to the matter of laying off any real estate as sold, or in the plat, description or report thereof, made by the surveyor or other person, shall, after the deed is made, invalidate or effect the sale or· deed." We hold that this does not cure the defect in the delinquent and sale lists above specified. Those defects are not merely irregularities within the meaning of that curative provision. That provision supposes lists not utterly void, mere nonentities, vanities, but lists which have substance, which contain enough to make· them colorable lists under the law, but which have some defect in them. Surely the Code never meant to dispense wholly with a delinquent list or a sale list, and there are none in this case. We must not think that the word "description" in the statute above· quoted dispenses with a description of the land in an assessment list, or a delinquent or sale list. That refers to the description made by .the surveyor in his plat or report, not the description of the land in those lists, since description in those lists is necessary as notice to the land owners. Therefor we hold that this deed is void.

The next question is whether the land owner must pay the taxes and costs prescribed by that clause of section 25, which says that no tax deed shall be set aside for any mistake or irregularity in the proceedings until the land owner shall pay purchase money paid for the real estate at the sale and subsequent taxes and costs of survey and report. We hold that such payment must be made as a precedent condition to the vacation of the deed. That clause of the statute is important. It is argued that as the defects pointed out above make the proceeding null, not simply voidable, it logically follows that there is no duty to·

pay such taxes on the owners. This is a distinct clause in the statute. As the tax purchaser has paid taxes chargeable to the owner, equity calls upon the owner to repay the tax purchaser money which the owner should have paid, and which the tax purchaser had paid for him. I think the statute means just that. This follows from another consideration. We have seen that there be some defects cured by the statute where the sale stands good, and clearly this refunding provision does not apply to those cases; therefore, it must apply to cases not cured by the statute, where the defect causes the failure of the purchaser's title. In addition the bill offers to pay the purchasers the proper amount. It may be thought that this position is inconsistent with our holding on this point in *State* v. *McEldowney*, 54 W. Va. 695: but I distinguish that case from this, because in it the land was assessed contrary to the prohibition of law, and sold contrary to another prohibition, whereas in this case it is not so. In this case the owners were chargeable with taxes; in that case Cassey L. Newsom was not chargeable with taxes by assessment, as the state had other means of getting omitted taxes from her. *Cunningham* v. *Brown*, 39 W. Va. 588.

Defendants resist the vacation of the deed because not enough money was tendered. But a tender was made. There was lacking only a small sum, which should not defeat relief. *Wyatt* v. *Simpson*, 8 W. Va. 394. Redemption statutes are to be liberally construed. *Danser* v. *Johnson*, 25 W. Va. 381. Besides, the defendants refused redemption because too late, and this dispenses with the question of the amount. *Koon* v. *Snodgrass*, 18 W. Va. 320; *Thompson* v. *Lyon*, 40 *Id.* 87.

Therefore, we hold that the tax deed is utterly void, and we reverse the decree of the circuit court of Tucker county and send the case back to that court with direction to ascertain the proper sum to be paid to Moore and Dorsey by the owners of the three lots, and then to enter a decree vacating the said tax deed on payment to Moore and Dorsey of the proper sum.

*Reversed.*

Note by BRANNON, JUDGE:

I add this note, though likely not material. What property was sold by the sheriff belonging to Eliza McMillen? Judging by the record of the sale he could not have cried the sale of

any particular piece of her property. It has been suggested that the sale would apply to any piece of her property in Parsons. This cannot possibly be sound law. Assessment list, delinquent list and sale list must describe it. In addition to authorities above cited I add Cooley on Taxation, 3d ed., 740. "In listing the land it must be described with particularity sufficient to afford the owner means of identification and not to mislead him.* * * The result of the whole is, that where the assessment wholly fails to lead to identification, so that neither the owner nor the officer can tell that his land is taxed, the duty of payment cannot be performed, and the assessment is void." The suggestion that the sale might apply to any piece of property of Eliza McMillen is accompanied by the admission that this defect is such as would vitiate the deed, and is not cured by statute, and yet it is said that the sale is not void, but only voidable. How it can be that this defect is such as to mislead, and such as is not cured by section 25, chapter 31, Code, and yet be only voidable, not void, I do not see. I repeat that it is void because of those lists, as to Eliza McMillen, being no lists at all, not colorable lists even, but so radically defective as to be void as to her. It cannot be thought that those delinquent and sale lists can be aided by oral evidence to prove what property was meant to be returned delinquent and sold, or what property the sheriff actually cried out. The record is the sole test as to this. *McLain* v. *Batton,* 50 W. Va. 121.

DENT, JUDGE, *(concurring)*:

I concur in the conclusion in this case, but not in point one of the syllabus, nor the reasoning of JUDGE BRANNON's opinion in relation thereto. Under chapter 31, Code, there are four classes of cases in which suits can be instituted to set aside tax deeds.

*First.* Under section 25, when the owner has been misled by some irregularity in the proceedings as to what portion of his real estate was sold, and when for what year or years it was sold or as to the name of the purchaser thereof, provided he would have redeemed the same had he not been so misled by such irregularity, and provided further that he pay the tax purchaser the amount of his purchase money and the subse-

quent taxes and costs paid and incurred. This is a mere avoidance of the sale by redemption, and it is not because the deed is void, but because it is voidable by reason of the misleading irregularity existing in the proceedings which prevented the owner from paying the taxes and redeeming the land before the deed was made. *Gerke Brewing Co.* v. *St. Clair,* 46 W. Va. 93.

*Second.* Under sections 26 and 27, when the taxes are not in arrear, but have been once paid. To avoid the deed under this head suit must be brought within five years after the deed is made. Both these classes represent privileges reserved by the statute to the owner, and of which no other person can take advantage except by his authority. Hence the deeds by virtue thereof are rendered voidable but not void. They are good against all others except the owner, his alienees, heirs or devisees.

*Third.* Under section 9, when the officer making the sale is guilty of fraud in connection therewith, that is, holds an illegal interest therein. The cases of *Phillips* v. *Minear,* 40 W. Va. 58, and *McClain* v. *Batton,* 50 W. Va. 121, which properly come under this head, were both decided wrong, because they were improperly confounded with the first class of cases as above set forth. The sales were both set aside because of the fraud of the officer, when such fraud was neither alleged nor proven, but was conclusively presumed from a defective affidavit, contrary to both the rules of law and equity. *Vance Shoe Co.* v. *Haught,* 41 W. Va. 275; *Billingsley* v. *Minear,* 44 W. Va. 657; *Trustees* v. *Blair,* 45 W. Va. 812 (32 S. E. R. 203); *First National Bank* v. *Boreman,* 36 W. Va. 649 (14 S. E. R. 989); *Pusey* v. *Gardner,* 21 W. Va. 469. The cases of *McClain* v. *Batton* and *Phillips* v. *Minear* and *Johnson* v. *Minear,* 40 W. Va. 160, are in hopeless conflict with *Boggs* v. *Scott,* 48 W. Va. 316; *Gerke Brewing Co.* v. *St. Clair,* 46 W. Va. 93; *State* v. *Sponagle,* 45 W. Va. 415.

*Fourth.* Under ordinary equitable jurisdiction to remove cloud from title because the deed is void for illegality or fraud. Cases under the third class naturally fall under this head, but they are put in a separate class because section 9 provides that the interest therein of the officer making the sale shall render it void. This fourth class includes all tax deeds

which are for any reason void and not merely voidable, and therefore covers all suits to set aside such deeds except those which come under the first and second classes. The following cases belong to this class: *State* v. *McEldowney,* 54 W. Va. 695; *Holt* v. *King,* 54 W. Va. 441; *Totten* v. *Nighbert,* 41 W. Va. 800, (24 S. E. 627); *State* v. *Eddy,* 41 W. Va. 95 (23 S. E. 329); *State* v. *Tavenner,* 49 W. Va. 696, (39 S. E. 619); *Cunningham* v. *Brown,* 39 W. Va. 588; *Campbell* v. *Wyant,* 26 W. Va. 702; *Wyant* v. *Simpson,* 8 W. Va. 394.

There are a line of cases in which tax deeds were held to be void under the law as it existed prior to the enactment of the present statute in 1882, and which have been superseded thereby, to-wit: *McAllister* v. *Cottrell,* 24 W. Va. 173; *Simpson* v. *Edmiston,* 23 W. Va. 675; *Barton* v. *Gilchrist,* 19 W. Va. 223; *Orr* v. *Wiley,* 19 W. Va. 150; *Jones* v. *Dills,* 18 W. Va. 763; *Dequasie* v. *Harris,* 16 W. Va. 360; *Burlew* v. *Quarrier,* 16 W. Va. 108.

The reasons for such holding is given in *Simpson* v. *Edmiston,* cited, and is in short that a tax purchaser is not in law a *bona fide* purchaser, but takes only such title as the deed gives him, and it being void for defects in the tax proceedings is a nullity and passes no title, and creates no privity between the purchaser and the delinquent owner. These cases were so decided under the provisions of section 25, chapter 31, Code, 1868, and section 25, chapter 117, Acts of 1872-3, which is in these words, to-wit:

"When the purchaser of any real estate so sold, his heirs or assigns, shall have obtained a deed therefor according to the provisions of this chapter and caused the same to be admitted to record in the office of the clerk of the county court of the county in which such real estate or the greater part thereof may lie, such estate shall stand vested in the grantee in such deed in and to said real estate as was at the commencement of or at any time during the year or years for which the said taxes were assessed, vested in the party assessed with the taxes for which it was sold, and in any other person or persons having title thereto who have not in his or their own name been charged on the assessor's books of the proper county or district with the taxes on said real estate for the year or years for the taxes of which the same was so sold, and actually paid the same as required by law, notwithstanding any irregularity in the pro-

ceèdings under which the said grantee claims title, unless such
irregularity appear on the face of the proceedings of record in
the office of the clerk of the county court, and be such as ma-
terially to prejudice the rights of the owner whose real estate
is sold * * * " In the cases aforesaid the court held that such
prejudicial error existed, and no estate passed to the tax pur-
chaser, but his deed was a nullity.

The present section 25, chapter 31, Code, provides that all
the right, title and interest of the delinquent owner of the land
shall be transferred to and vest in the tax purchaser "notwith-
standing any irregularity in the proceedings under which the
same was sold *not herein provided for,* unless such irregularity
appear on the face of such proceedings of record in the office
of the clerk of the county court, and be such as materially to
prejudice and mislead the owner. of the real estate so sold, as
to what portion of his real estate was so sold and when and for
what years it was sold, or the name of the purchaser thereof;
and, unless it be clearly proven to the court or jury trying the
case that but for such irregularity the former owner of such
real estate would have redeemed the same under the provisions
of this chapter." * * * * * * * "And no deed for
any real estate sold under the provisions of this chapter
shall be vacated or set aside in whole or in part by *reason
of any mistake or irregularity in the proceedings of record*
*as aforesaid,* unless and until the person entitled to have
the same so set aside, shall pay or tender to the purchaser
or his heirs, devisees or assignee, or the person holding
under him or some one or more of them, the purchase money
paid for the said real estate at the time of the sale thereof,
and all the taxes since paid thereon for any year or years
for which such person so claiming or those under whom he
claims, have not paid taxes thereon, and the costs of the sur-
vey or report made as hereinbefore required, with interest
on each sum from the date of the payment thereof to the time
of such payment by the person so claiming." Under these pro-
visions, which cover every possible irregularity in a tax pro-
ceeding, the deed is not void but is voidable on compliance by
the owner with the stipulated conditions; that is, showing that
he would have redeemed the land were it not for the misleading
mistake or irregularity, and on payment of the sum necessary

for the redemption thereof, and until this is done, the deed is valid to pass the title, and can in no wise or by no person be collaterally attacked for any irregularity, error or mistake coming within the purview of section 25. The deed cannot be treated as void, but on a proper showing, it may be vacated and annulled by the court. The errors or mistakes for which the deeds in the last line of cases mentioned were held void all come within the purview of and are covered by section 25. Hence these cases have ceased to be authority as to such questions. *Jackson* v. *Kettle,* 34 W. Va. 207, (12 S. E. 484). A void deed is a nullity and may be treated as such in any proceeding in which it may be involved. While a voidable deed is one which may be set aside or vacated by proper showing in a direct attack thereon by the party interested. Under section 25, no irregularity, error or mistake in the tax proceedings, however gross, is sufficient to render a tax deed void. Independent of such section any irregularity which vitiates the power to sell will render such deed void. If there is no assessment of taxes, or it is for any reason illegal, if the land has not been returned delinquent, or has not been certified to the officer for sale or has not been sold, then the tax deed would be void, for all these elements are necessary to give the clerk authority to make the deed. But all mistakes, errors or omissions in carrying out these essential steps are mere irregularities in the proceedings, none of which are sufficient to justify the setting aside or vacating the deed as voidable, unless it "be such as materially to prejudice and mislead the owner of the real estate so sold, as to what portion of his real estate was so sold, and when and for what year or years it was sold or the name of the purchaser thereof;" and not then unless the owner would have redeemed the same had it not been for such irregularity, and not then unless the owner pay or tender a sufficient sum to the tax purchaser or his representative to redeem the same. One of the errors in this case relied on to make the deed void is the failure to describe the real estate sold with sufficient explicitness. The delinquent list shows that it was the real estate of Eliza A. McMillan and the amount of taxes due and unpaid thereon. Hence it was to all intent and purpose a delinquent list, although it failed to contain a description of the real estate sufficient for its identity. Mrs. McMillan,

however, could tell from it that her real estate had been returned delinquent and the amount of taxes due thereon. The omission of the description did not affect the legal authority to sell, but was only an irregularity or mistake in the proceedings "not otherwise provided for," which mislead the true owner, not Mrs. McMillan, as to what portion of his real estate was sold and the name of the purchaser thereof, as it really furnished him no notice of these matters, and thereby prevented him from redeeming the same. Such irregularity rendered the deed not void, but only voidable, on payment of the sum necessary to redeem the same.

This is virtually confessed in the opinion, which is confusing and contradictory. If the tax deed is void, the tax purchaser is not entitled to have his purchase money, taxes and costs returned, for redemption is not required. *State* v. *McEldowney,* 54 W. Va. 695; *Holt* v. *King,* 54 W. Va. 441; *Totten* v. *Nighbert,* 41 W. Va. 800; *Cunnigham* v. *Brown,* 39 W. Va. 588; *Simpson* v. *Edmiston,* 23 W. Va. 675.

Yet the opinion holds the tax deed void and requires the redemption of the land by repayment of the purchase money, taxes and costs as though the deed were only voidable on such repayment. The same omission in the return of the officer as to the lands sold is held in both the syllabus and the opinion to render the deed void in the very teeth of that clause of section 25 which provides, "But no sale or deed of any such real estate under the provisions of this chapter shall be set aside or in any manner affected by reason of the failure of any officer mentioned in this chapter to do or perform any act or duty therein required to be done or performed by him after such sale is made, or by the illegal or defective performance or attempt at the performance of any such act or duty after such sale." This is a most just and commendable enactment of the legislature. There is no good reason founded in equity or justice why after a sale is made, it should be set aside or affected in any manner by the failure of the state's agents to do or perform any duty required of them or the illegal or defective performance on their part of any such duty. To allow the state or an individual to take advantage of any such failure on the part of its officers is to allow the grantor to annul its contract by reason of the unauthorized acts of its agents after the contract is fully made and the purchase money paid, before consummation by

deed." In cases of individual sales no power would for one moment be tolerated or recognized, and it is unjust to allow such power to exist in cases of public sales authorized by law for the benefit of the state. While the illegal neglect of duty on the part of its officer may not bind the state except by virtue of this provision, it should not bind innocent tax purchasers who have no control over the state's officers and have no power to prevent the neglectful or illegal discharge of their duties. They are in no sense the agents of the tax purchasers. Their authority is conferred upon them by the state and exercised for the state's benefit. I am aware that this provision has been so construed by this Court as to make it only effective after deed duly executed and recorded. *Jackson* v. *Kettle,* 34 W. Va. 207 (12 S. E. 484) ; *Hays* v. *Heatherly,* 36 W. Va. 631; *Baxter* v. *Wade,* 39 W. Va. 281; *Winning* v. *Eagan,* 19 W. Va. 44; *Boggess* v. *Scott,* 48 W. Va. 316. And even extended to embrace certain cases after the deed has been executed and recorded. *Phillips* v. *Minear* and *McClain* v. *Batton,* heretofore cited, and the present case. Where the matter is to end depends on the future decisions of this Court. The reasons given by JUDGE LUCAS for such holding in *Jackson* v. *Kettle.* 34 W. Va. 216, are as follows: "If this concluding paragraph is to be given the force of a sweeping indemnity against all defects in the return of the officer making the sale, then the preceding paragraph which I have quoted would be entirely useless or repugnant. Such a construction will be avoided, if possible. Conflict and repugnance in statutes should always be avoided by construction, if possible. Indeed a statute ought upon the whole to be so construed that if it can be prevented, no clause, sentence or word should be superfluous, void or insignificant. Where a general intention is expressed and the act also expresses a particular intention incompatible therewith the particular intention will be regarded as an exception and will prevail." The preceding paragraph quoted is as follows: "And no irregularity, error or mistake in the delinquent list or the return thereof or in the affidavit thereto or in the recordation of such list or affidavit or as to the manner of laying off any real estate so sold or in the plat, description or report thereof made by the surveyor or other person shall after the deed is made invalidate or affect the sale or deed." The general clause before quoted is as follows: "But no sale or deed of any such

real estate under the provisions of this chapter shall be set aside, or in any manner affected by reason of the failure of any officer mentioned in this chapter to do or perform any act. or duty herein required to be done or performed by him after such sale is made, or by illegal or defective performance or attempt at the performance of any such act or duty after such sale." There is no repugnancy or conflict between these two provisions. And if they were repugnant or conflicting, the first must give way to the last both in position and enactment. The supposed repugnant part of the first quotation was enacted in 1873, while the second quotation was not added until 1882. Yet the first is by such construction, made to modify and amend the last. This is contrary to the usual rules of construction for the last should prevail over the first. See the opinion in the case of *Speidel Co.* v. *Warder*, decided at this term, where such rule is stated and improperly applied. 26 Am. & En. En. Law (2d Ed.) 618, 619. The first is not near as broad and does not cover the same ground as the last. The first only operates after the deed is made while the second, according to its unequivocal language operates on the sale before deed as well as after the deed and no part of it is useless. JUDGE LUCAS's construction in confirming the second to the sale or deed after the deed is made renders a portion of the first useless as covering a small portion of the general ground covered by the second. Both these clauses are in perfect harmony with each other, except that the language of the latter makes its provisions apply to the sale before deed made and to so construe them does not make any clause, sentence or word superfluous, void or insignificant that are not superfluous, void and insignificant under the construction by JUDGE LUCAS. Nor is the general intention, if it can be so called, to prevent the omission, and neglect of duty of the state's officers after the sale, from in any manner affecting or invalidating such sale in any wise incompatible with the specific intention to prevent the same or other irregularities from invalidating the sale or deed after the deed is made. In truth the general intention of the section is to prevent the invalidity of the deed while the specific intention of the last clause is to prevent the invalidity of the sale or deed by particular acts or omissions after the sale. JUDGE LUCAS's argument is plainly fallacious and has not a single rational foundation stone on which to rest.

The decision results in the holding that a sale made void by the misconduct of one officer thereafter can be made valid by the illegal and unauthorized act of another officer or himself. *Barton* v. *Gilchrist*, 19 W. Va. 223; *McCallister* v. *Cottrell*, 24 W. Va. 173. JUDGE LUCAS says in effect the clerk has no power to make the deed, yet if he does illegally do so, it cures the defect that made the sale void. The legislature never intended to enact such an absurd paradox. The language of the enactment is simple and plainly expressive of the legislative intention and requires no references to other clauses with which it is not in conflict, but to which it is only accumulative, to ascertain its proper construction. If the legislature had intended to limit its operation until after deed made, it would have so expressed itself, as it had already so limited other clauses which were fresh in its mind. Not only has the legislature so enacted, but it is right and just.

Agents of the state should have no power to defeat lawful sales made by them after they are made any more than private persons should have such power. Otherwise the *bona fide* tax purchaser would be at the mercy of the state's agents after his purchase, unless he can obtain an illegal deed to cure a void sale. Notwithstanding the fallacy of this decision, it appears to be the settled law of this state, and I only mentioned it here to emphasize the fallacious construction of the same clause in the present case, and to show to what extremes a fallacy once adhered to finally leads.